## TANKERSLY, ET AL. v. THE STATE BANK.

1. It is not essential that an election to ascertain the sense of the township, as to a sale of the 16th section, should be held *upon* the 16th section,—the commissioners may consult the convenience of the people, by holding it at another place.

2. Where there has been an election in fact, to ascertain the sense of the qualified electors as to a sale of the 16th section, which is not contested within twenty days, and a sale of the land is actually made, all persons are concluded in a court of law, from contesting the validity of the election:—Whether in a case of fraud, on the part of the commissioners, a court of equity might not interfere at the instance of the township—*Quere.*

3. It is not essential to the validity of a sale of a 16th section, that the judge of the county court should issue an order of sale. Nor that the commissioners should return the particulars of the sale to the county court.

4. The certificate of purchase which the commissioners were required to give the purchaser, setting forth the particulars of the sale, was intended exclusively for his benefit, and if defective, will not vacate the sale,—nor will an omission to acknowledge it before a judicial officer, or a defective acknowledgment, affect the rights of the township.

ERROR to the Circuit Court of Sumter.

Assumpsit by the defendant in error against the plaintiff in

error, on a promissory note for $2,462 50, dated 6th July, 1836, and bearing interest at six per cent. from the date.    Three other suits on notes for the same amount, being consolidated with this.

To declarations in the usual form, the defendants pleaded *non assumpsit* and failure of consideration, upon which issue was taken, and the following special pleas: 1. That the four notes sued on, were executed by the defendants to James Savage and others, school commissioners of section 16, township 19, range 2, west, for the pretended consideration of lots number one, two, three and four, comprising the north half of said section, pretended by them to be sold to the said Tankersly, under and by virtue of their powers as commissioners as aforesaid, and for no other consideration; and said defendants aver that no election was held *at* said 16th section, to ascertain the sense of the qualified electors, in relation to the sale or no sale of said section, or any part thereof, and this, &c.

2. The second plea sets out the contract as in the first, except that it alleges, "that a majority of the qualified electors in said township, at the time the pretended vote was taken, never voted for a sale of the said section, or any part thereof, and this, &c."

3. The third avers, "that from the time of the pretended election held for the sale of said land, to the time of the pretended sale of the same, Peter Doty was judge of the county court of said county, and never issued an order of sale to said commissioners, to sell said lands, &c.

4. "That since the time of the said pretended sale, neither said commissioners nor their successors in office, have made a return of said pretended sale to the judge of the county court of said county, nor to the clerk of said county, when there was no Judge, &c."

5. That the said commissioners did not, at any time before or since the execution of the said promissory notes, execute a certificate as by law required, but executed and delivered to him a paper, as follows; "At a sale of the one half of the 16th section of land, pursuant to law and notice, we do hereby certify that George Tankersly, being the highest bidder for lots No, 1, 2, 3, and 4, each containing eighty acres, the whole of said lots comprising the north half of section 16, township 19, range 2, west, in the county of Sumter, and having given his notes with surety, as the law directs, upon the payment of the same, the said George

Tankersly will be entitled to a patent for the said land, from the Governor of the State of Alabama."

(*Signed by the Commissioners.*)

6. That the commissioners never executed to said Tankersly, or to any other person in his behalf, any certificate of purchase, setting out the amount of the purchase money agreed to be given.

7. That the said commissioners never acknowledged in open court, or before any judge or justice of the peace for said county, any certificate of purchase for said land."

To these pleas, the plaintiff demurred, and the court gave judgment on the demurrer, against the pleas. And the jury having rendered a verdict for the plaintiff on the issues, judgment was rendered for the plaintiffs.

The assignment of error is, that the court erred in its judgment on the demurrer to the pleas.

Mr SMITH, referred to the provisions in the Digest, authorizing the sale of the school lands, and insisted that the power to sell was a privilege to be exercised only by the majority of the inhabitants. That the power intrusted to the commissioners was a naked power, and could only be exercised in the mode pointed out by the statute;—that not having complied with the statute provisions, their acts were void. [2 Kent's Com. 298, 2 S. & P. 190; 2 Cranch, 130; 4 Ala. 70, 588, 622; 4 Wheaton, 77; Angel & Ames on Cor. 189, 192, 212, 14, 229, 33.]

The fact that Tankersly has retained possession of the land, will not prevent him from showing that the act was void. No act of his can impart validity to a void contract, or give to the commissioners authority not conferred by the statute.

HOPKINS and CORNICK, for defendant in error, contended that the statute had been substantially complied with—that after the lapse of twenty days from the election, the township was forever barred from denying its validity, and that no one else could object to it, and that, therefore, the purchaser could not complain, as he had an undoubted title to the land.

ORMOND, J.—The statutes in force when the sale of the 16th section in this case was made, passed in 1828, will be found in

Aikin's Digest, 377. The 33d section provides, "that it shall be the duty of the school commissioners of the several sixteenth sections in the State, or a majority of them, on the second Monday in May next, on giving twenty days public notice, by advertisement in three of the most public places in the respective townships, to hold an election to ascertain the sense of the qualified electors who may be inhabitants of such township, respecting the sales of their sixteenth sections under the provisions of this act, and the commissioners conducting said election shall, before they open the polls for said elections, take an oath before some person authorised to administer the same, that they will faithfully and impartially conduct the same, and make a true return thereof, according to law; and they shall provide a ballot box, and cause the voters to write upon their tickets, "sale" or "no sale," and they shall keep the polls open from ten o'clock in the forenoon, until four o'clock in the afternoon. at which time they shall close the polls, and count out the ballots, and certify the result to the judge of the county court of the proper county; and if there be no judge in office, then they shall certify the same to the clerk of the county court of the proper county, and shall keep the ballot boxes, with the votes therein, sealed up for twenty days, when they shall be destroyed, if no person contests said election.    And in the event any such election be contested, then the judge or clerk, as the case may be, shall have power to decide said contested election."

§ 34. In all cases where a majority of the qualified electors in any township, have chosen to sell the sixteenth section therein, and no person has contested and set aside said election, it shall be the duty of the judges of the county courts, and of the clerk, &c. at the expiration of twenty days from such elections, to issue an order of sale to the commissioners of such sections as are elected to be sold, and said commissioners shall, on the reception of such order, cause," &c.

By the act of 1830, [Aik. Dig. 381, § 49,] the school commissioners were authorised, at any time they thought proper, "to hold an election at their respective sixteenth sections," to ascertain the sense of the township in regard to the sale of the 16th sections, giving thirty days notice thereof at six of the most public places in the township.   Other portions of the act will be brought to view as we progress with the examination of the case.

We propose, in the first place, to examine each plea, and compare it with the statute.

1. The first plea seeks to invalidate the sale, because the election, to ascertain the sense of the qualified electors as to "sale" or "no sale," was not held *at* the 16th section. We are of the opinion that it was not the intention of the legislature, that the election should be held upon the 16th section, and that it would be invalid if held elsewhere. It was a mere direction to hold the election upon, or near, the 16th section; and if there was no proper place for holding the election upon the land, the commissioners might consult the convenience of the people by holding it another place.

2. The objection raised by the second plea, that a majority of the qualified electors of the township did not vote for a sale of the land, presents a question of graver import.

The essential pre-requisite to a sale, was the assent of a majority of the inhabitants of the township. To secure, as far as possible, fidelity on the part of the commissioners, they were required to hold the election under the sanction of an oath, previously taken by them; and before they made a sale, to enter into a bond in a large penalty, faithfully to perform their trust. In addition, the very nature of the act contemplates the utmost degree of publicity, and pre-supposes a full knowledge of the facts on the part of the inhabitants; nor is it easy to conceive that every voter would not know the state of the polls as well as the commissioners. Yet, as it was possible that the commissioners might return falsely, that a majority had voted, when they had not, or the election might be invalid from some other cause, twenty days were required to elapse before any sale could take place, during which interval, any one had the right to contest the election. If no one contested the election within the time provided by law, and a sale was actually made, all persons are concluded, at least in a court of law, from denying the validity of the election. There can, we think, be no doubt that it was the intention of the legislature to foreclose all inquiry into a matter which, after the destruction of the ballots, became exceedingly difficult, if not impossible, to ascertain, and thus to enable those who might desire to purchase, to do so with safety.

Whether, in a case of fraud on the part of the commissioners, a court of equity might not, at the instance of the township, set

36

aside the sale if seasonably applied for, is a question we need not now discuss. But we feel thoroughly convinced that this objection cannot be raised at law by any one after a sale, when there has been an election in fact, and especially not by the purchaser, as he could not possibly be prejudiced by it, the direct tendency and manifest object of the prohibition being to quiet his title.

3. The third plea asserts the invalidity of the sale of the land, because the Judge of the county court did not issue an order of sale. This order, the judge or clerk, as the case may be, is required to issue after the expiration of twenty days, if no one contests the election. It is perfectly obvious, we think, that the judge of the county court has no other power conferred on him, than to determine on the validity of a contested election. The power of selling is exclusively lodged with the voters of the township, and no portion of the law lends any countenance to the supposition that he had the power to thwart their wishes.

Again; if there was no contest, the judge of the county court had not the means of determining whether the election was valid or invalid, because a majority had not voted, or from any other cause. The only evidence in his possession, relating to the matter, would be the certificate of the commissioners, that a majority of the qualified electors had voted for a sale, whilst the evidence of the fact, the ballots, would be in the possession of the commissioners, sealed up. As, therefore, he had no power to prevent a sale of the land, when no one had contested the election, it is inconceivable that his approbation or consent should be necessary to carry into effect the expressed will of the township.

We, therefore, conclude that the order he was required to issue, was a mere notification of the fact that no one contested the election, and consequently, that there was no obstacle to a sale of the land. This being its whole object and design, the commissioners might proceed to sell upon their own knowledge of the fact.

4. The fourth plea, without disputing the regularity of the election and sale, relies, as a defence to the action, upon the omission of the commissioners to return the particulars of the sale to the county court. The act, [Aik. Dig. § 37, required the commissioners, after they had made sale of the land, and had taken the notes of the purchaser, with surety, to enter all the particulars of the sale in a book, to be kept by them for that purpose, setting forth a particular description of the land sold, to whom sold; for

what amount in money, what amount in notes, and who are the principals and securities, and to make a similar return to the judge of the county court, who was required to record it in his office.— The design of this portion of the act, was to preserve an authentic memorial of the whole transaction, for the benefit of the township, in such a permanent form, that it would survive to posterity. All this was to be done after the sale was complete, and how its omission can in any manner affect the purchaser of the land, we are unable to conceive. It was a matter over which he had no control; which did not in any manner relate to or affect his title, and which, whether done or omitted, was alike unimportant to him.

The 5th, 6th and 7th pleas, relate to the certificate of purchase which the commissioners were required to give the purchaser, after the sale was complete, by the execution of his notes for the purchase money, with surety, which when acknowledged in a particular mode, was, after the payment of the purchase money, to constitute a title. These pleas, like the last, are framed upon the supposition, that although the sale of the land was regular, yet, because an informal certificate of purchase was executed by the commissioners, or because they failed to execute any, or omitted to acknowledge it before some judge, that it will retro-act upon the sale, and avoid it, although the purchaser has always retained the possession.

This portion of the law was designed for the exclusive benefit of the purchaser of the lands, and it was his duty to see that it was properly executed. The only defect pointed out in the certificate which was made, is, that it does not state the amount of the purchase money, and this, in our opinion, is altogether immaterial. It is sufficient, as it identifies the land and purchaser, to enable him, if he pays the purchase money, to obtain his patent. If, however, none had been given, or the one given had been wholly defective, the right of the township to the purchase money, would not be in the slightest degree affected by it. The statute points out the mode of obtaining a duplicate certificate, if the original is lost, and the same rule would certainly apply to a defective certificate, or where one had never been given.

The acknowledgment of the certificate of purchase, by the commissioners, before a judicial officer, was doubtless intended as a mode of verifying the official character of the commissioners to

Tankersly, et al. v. The State Bank.

the Executive, and does not exclude any other mode by which that officer might be certified of the fact.

From this examination of the pleas, in connection with the statute, it appears there has been a substantial compliance with its provisions. That there was in fact an election to ascertain whether a sale should be made—that a sale was in fact made to the plaintiff in error, and that upon his executing his notes as the statute requires, he was let into the possession of the land. Such being the fact, and no member of the township having contested the validity of the election, the township is forever estopped from denying his title, and he cannot, therefore, refuse to pay the purchase money.

We have abstained from entering upon the inquiry, whether the purchaser of 16th section lands, could, in any case, allege that the provisions of the law had not been complied with, when the township acquiesced in the sale, and there was no obstacle to his obtaining a title, because, as already observed in this case, the law has been substantially complied with, and the sale is, therefore, binding, both on the township and the purchaser.

The result, thus obtained, renders it unnecessary to examine the argument of the counsel for the plaintiffs in error, so earnestly pressed on the consideration of the court, that the power conferred on the commissioners to sell the land, was a special power, not accompanied with an interest, and could, therefore, only be exercised in the precise mode pointed out by the statute. In truth, however, there seems to be but little analogy between the two cases. This statute is peculiar in its character; it does not merely create a special agent to do a particular act in a particular mode, but contemplates the joint action of the agent and the people of the township, to do the iniatory act on which the whole depends, and concludes the latter from making any objection to the validity of this fundamental part of the proceeding, unless it be interposed within a limited time. It is, however, unnecessary to pursue this subject further.

Let the judgment be affirmed.