## THE BRANCH BANK AT MOBILE v. TILLMAN.

1. To a bill to avoid the payment of a note given upon the purchase of a sixteenth section, alledging that the sale was unauthorized, and that the subsequent proceedings were irregular, the commissioners whose acts are drawn in question, are necessary parties.

2. The order which the Judge of the county court is required to make, where it is certified to him under the act of 1828, that a majority of the qualified electors of a township voted for a sale of their sixteenth section, is not indispensable to authorize a sale; but the commissioners may, upon their own knowledge that a majority voted for it, proceed to sell.

3. In requiring that the commissioners should make an entry in a book, of the sale of a sixteenth section, that notes had been taken of the purchasers, with other particulars of the sale, &c., and that the same should be returned to the Judge of the county court to be recorded, the act of 1828 is merely directory—and the omission of all this could not affect the right of a purchaser. The purchaser cannot refuse to pay the purchase money, and the township will be estopped from denying his title, where it appears that the sale was made under an election by the voters of the township, that the purchaser executed his notes as the statute requires, and was let into possession.

4. *Quere?* Where a bill to enjoin a judgment relies upon matters which would have constituted a legal defence, alledging that he was uninformed

of their existence at the time of the trial, should it not appear that he had used due diligence to acquire the information, to enable him to defend at law.

Writ of Error to the Court of Chancery sitting at Livingston.

The defendant in error set forth in his bill, that about the 29th February, 1840, he purchased at public auction, from William McLendon and Christopher McRae, commissioners to sell the 16th section, of township 14, of range 1, west, in the county of Sumter, the west half of the south west of that section, containing eighty-one acres, at the sum of eight dollars and eighty-five cents per acre, amounting to $716 85, and thereupon made his four promissory notes, for $175 each, negotiable and payable at the Branch of the Bank of the State of Alabama, at Mobile, with John Tillman and Lewis Brock as securities. Upon the two first notes judgments have been recovered in the county court of Sumter, and executions issued, which have been levied by the sheriff of that county, on the complainant's property, who will sell the same unless speedily restrained.

It is further alledged, that it will be seen upon examination of the records of the county court of Sumter, that the land in question was sold by the commissioners without any order of sale, or other legal authority ; that the notes received therefor, have never been deposited in the Bank of the State of Alabama, or any of its branches; nor do they assert a claim ; nor have they ever ordered them to be put in suit.

Wm. McLendon is dead, and Christopher McRae is no longer an acting commissioner, but has been removed therefrom : *Further*,that since the rendition of the judgments and the levies upon his property, the complainant has visited Mobile, and upon inquiry, was informed by the cashier of the Branch Bank there, that he would not furnish him a certificate of the payment of the purchase money for part of the 16th section, even if the notes were paid. The reason as-

signed for the refusal was the fact, that the notes had not been deposited in bank, and its books and correspondence showed nothing in respect to them.    It is alledged that the foregoing facts have all come to the complainant's knowledge since the rendition of the judgments, and within the two weeks preceding ; and that they are such as to induce him to believe that McLendon and McRae intended to appropriate the proceeds of the notes to their own use : *Further*, the notes have never been returned to the Judge or clerk of the county court of Sumter, upon a pretence by the commissioners, that they were lost ; which pretence it is believed is wholly unfounded:

The complainant has been, and still is, willing to satisfy the judgments against him, if he could procure a title to the land purchased ; but he finds this utterly impracticable and has abandoned the same, and does now give it up to the commissioners of the 16th section.    An injunction is prayed to restrain proceedings on the judgments and executions ; that the Branch Bank may be made a party, and answer the bill ; and that such other relief be granted as may be proper.

A motion was submitted to dismiss the bill for want of equity, and it was agreed that if this motion be overruled, then a decree should be rendered on the merits, and the bill should be considered as if it had been taken *pro confesso.* The Chancellor was of opinion that the facts alledged in the bill would have availed as a defence at law, had they been known to complainant previous to judgment ; and having acquired a knowledge of them since, they furnished ground for relief in equity.    It was thereupon ordered that the proceedings on the judgments and executions be perpetually enjoined : that the sale of the land be set aside, and that the notes which have not been sued on, be delivered up to be cancelled ; that as the commissioners who sold the land are not parties to the bill, so as to charge them with costs, and as no fault is attributable to the plaintiff at law, the complainant must pay the costs.

S. W. INGE, for the plaintiff in error, made the following points :    1. The bill does not authorize a rescission of the contract.    [1 Ala. Rep. 622 ; 4 Id. 83 ; 5 Id. 604 ; 6 Id. 277.]

2. A sufficient excuse is not shown for the failure to defend at law. [7 Porter's Rep. 549; 2 Ala. Rep. 92; 3 Id. 521.]

3. If the bill authorized a rescission, the Chancellor should have referred it to the Master to take an account of the rents and profits of the real estate while Tillman was in possession, and have charged him by the decree with the amount thus ascertained.

W. M. MURPHY, for the defendant in error.

COLLIER, C. J.—We think it altogether clear, even if the bill had disclosed a case proper for equitable interposition, that no final decree should have been rendered for the complainant, without first making the commissioners of the 16th section a party. But as a reversal for defect of parties would make it necessary to send the case back, we will inquire into the equity of the bill.

A statute passed in 1828, made it the duty of the school commissioners of the several 16th sections, to hold an election to ascertain the sense of the "qualified electors who may be inhabitants of the township, respecting the sale of their 16th section," and to "certify the result to the judge of the county court of the proper county," or if there be no judge in office, then to the clerk. And where a majority of the "qualified electors" have chosen to sell the 16th section, and the election has not been contested and set aside within twenty days after it was holden, it is the duty of the judge of the county court, and of the clerk, &c. to issue an order of sale to the commissioners, who shall, on the reception thereof, cause, &c.

In Tankersley, et al. v. The State Bank, 6 Ala. Rep. 277, the act above recited, came under review, when it was held, that "the judge of the county court has no other power conferred upon him than to determine upon the validity of a contested election. The power of selling is exclusively lodged with the voters of the township, and no portion of the law lends any countenance to the supposition that he had the power to thwart their wishes." It was consequently concluded, "that the order he was required to issue, was a mere notification of the fact that no one contested the election,

and that there was no obstacle to a sale of the land. This being its whole object and design, the commissioners might proceed to sell upon their own knowledge of the fact." *Further*, the requisition of the statute, that the commissioners should make an entry in a book, that they had made sale of the land, and taken notes of the purchasers with surety, with any other particulars of the sale, &c., and return the same to the judge of the county court to be recorded, was merely directory, and the omission of this duty could not affect the rights of a purchaser. In conclusion, in the case cited, it was said, " that there was in fact an election to ascertain whether a sale should be made—that a sale was in fact made to the plaintiff in error, and that upon his executing his notes as the statute requires, he was let into the possession of the land. Such being the fact, and no member of a township having contested the validity of the election, the township is forever estopped from denying his title, and he cannot, therefore, refuse to pay the purchase money."

It is not denied by the bill, in the case before us, that the commissioners furnished to the complainant written evidence that he was the purchaser of the part of the 16th section for which he gave his notes, or that such evidence is not extant among the papers of the commissioners, or in the office of the clerk of the county court. If the purchase is thus evidenced, even if the payment of the notes and the possession of the land were insufficient to take the case out of the statute of frauds, there can be no doubt, (unless it is objectionable for causes not brought to view,) but the purchaser could coerce a title.

If, however, the facts alledged would have been available had they been presented as a defence at law, it might perhaps be pertinently asked, whether the complainant has shown a sufficient excuse for the failure there to defend himself? Were not all the facts of which he has since acquired a knowledge accessible to him, and why did he not previously endeavor to avail himself of them. [French v. Garner, et al. 7 Porter's Rep. 549.] These questions need not be here answered.

20

It follows from what has been said, that the equity of the bill is not defensible; the decree of the Chancellor is therefore reversed, and the bill dismissed.