INGE *VS.* THE BRANCH BANK OF MOBILE.

1. Where A endorses a bill of exchange in blank, with an understanding that it is to be accepted by B, and this understanding is communicated to C, who purchases the bill, before the purchase; and the bill is not accepted by B, but by some other person:—A, the endorser, is not liable on his endorsement, to C, the holder.

2. The acceptor of a bill is primarily liable to pay the bill, and the drawer and endorser, if the proper steps are taken to charge them, are liable on the default of the acceptor—but the endorser is liable in no instance to the acceptor, unless in case of an acceptance for the honor of the endorser.

3. Where a creditor, without the consent of a surety, makes a valid agreement with the principal debtor to prolong the time of payment—the surety will be discharged.

4. There is no obligation to active diligence on the part of the holder in suing the acceptor, and the holder may forbear the employment of coercive measures as long as he chooses, if he does not agree to give time, so as to suspend his remedy against the acceptor, to the prejudice of the parties who are secondarily liable.

5. But an agreement between the holder of a bill and the acceptor, that the holder will not look to the acceptor for payment of the bill, until the holder has exhausted, without success, the legal remedies against the 'endorser, will operate to discharge the endorser.

Error to the Circuit court of Mobile.

Bank notice, against the endorser of a bill of exchange, tried before *Pickens*, J.

Plea, *non-assumpsit.* Verdict and judgment for plaintiffs.

On the trial of the case, the plaintiffs read in evidence a bill of exchange, of which the following is a copy:

Inge *vs.* the Branch Bank of Mobile.

"Exch: for $10,000.

"1 *August*, 1836.

"Five months after date of this first of exchange, (second of the same tenor and date unpaid,) pay to Wm. R. Hinton, or order, ten thousand dollars, for value received, negotiable and payable at the Branch of the Bank of the State of Alabama at Mobile, and place the same to account. Joel Lipscomb, jun.

"To *Adams & Taylor*, Mobile.

Endorsed on the back—

"*Wm. R. Hinton,*

"*R. Inge,*

"*Horner, Blocker & Co.*"

Written across the face—"*Adams & Taylor.*"

It was originally a printed bill, with the usual blanks.

The defendant then proved by J. R. Blocker, one of the firm of Horner, Blocker & Co., that he obtained the endorsement of Inge, when the bill was in blank, except as to the drawer and endorsement of Hinton, and that it was understood at the time between himself and Inge, that the bill was to be accepted by the house of Horner, Blocker, & Co. On cross-examination, he proved that Inge endorsed the paper to enable the house of Horner, Blocker & Co. to raise funds, if desired: that there was nothing said by Inge to forbid an acceptance by others, and that the witness had not informed the plaintiffs or other persons, that it was understood by Inge, that Horner, Blocker & Co. were to accept the bill.

William J. Blocker, another partner of the house of Horner, Blocker & Co., proved, that he presented the bill

to the Bank, to be discounted for the benefit of his house, and proposed to accept the bill, which was still in blank, except as stated: that the Bank was desirous to assist Horner, Blocker & Co., but objected to discount on their acceptance: that the funds would, by their rules, go to the credit of the last endorser, and not to Horner, Blocker & Co., and proposed in order that the discount might go to their credit, that some other acceptance should be obtained, to which witness assented, but that Adams & Taylor, or the directors, or some one of them did, was not distinctly proved. On cross-examination, the witness proved that he did not state to the board, or any one, that it was the understanding of Inge, that Horner, Blocker & Co. were to accept; and that the bill was discounted, and the proceeds passed to the credit of Horner, Blocker & Co.

It was further proved, that the directors agreed with Adams & Taylor, that in case they accepted the paper, they should not be looked to by the Bank, until it should fail to make the money out of the previous parties, and that it was alone on such understanding they did accept.

It was also proved, that previous to the discount, the fact, that Inge endorsed with the understanding that Horner, Blocker & Co. were to accept, was spoken of at the board of directors, and discussed by them, but no evidence went to shew, that any party to the bill, or any one, on either of their accounts, interposed any objection to the discount of the bill, or to the acceptance.

Upon this evidence, the defendant asked the court to charge the jury, that Horner, Blocker & Co. were not responsible to Inge, as acceptors of the bill—which charge

the court refused to give: and charged that if Inge had endorsed at the request of Blocker, and to enable Horner, Blocker & Co. to raise funds, and that they had received the discount on the bill,—this gave Inge as good a claim to recover from them, in case he had the bill to pay, as if Horner, Blocker & Co. had been acceptors.

Defendant also moved the court to charge the jury, that if the bank knew, before the bill was filled up, and before it was discounted, that Inge endorsed it in blank, to be filled up to the acceptance of Horner, Blocker & Co., and that Inge so understood the bill was to be filled up, at the time of endorsing the same, that then Inge was not responsible to the bank—which charge the court refused to give: but charged that if the bank, acting on the belief, that the endorsement of Inge was made to enable the house of Horner, Blocker & Co. to raise funds, and the acceptance of Adams & Taylor was taken to promote this object, and was not received with a view of injuring Inge, and had not done so:—then, although the bank might have been informed that Inge endorsed the bill, to be filled up to the acceptance of Horner, Blocker & Co., it did not present a legal ground against a recovery in the case.

Defendant also asked the court to charge the jury, that if the bank agreed with Adams not to look to Adams & Taylor, for payment of the bill, until the legal remedies were exhausted against the other parties, and they should fail to make the money out of them—that Inge would not be responsible—which charge the court also refused: and charged, that if to enable the proceeds of the bill to go to the credit of Horner, Blocker & Co., it were proper

to obtain another acceptance than theirs, and it was not with a view to defraud Inge, then it was competent for the bank to stipulate with Adams, that in case he would accept, the bank would not look to him, until the legal remedies were exhausted against the other parties, without impairing the right of the bank to recover out of Inge.

1. The assignments of error were the charges given and refused;

2. That the record did not shew that defendant had thirty days notice of the matter in the Circuit court;

3. Or, that the certificate of the President was produced according to the statute;

4. Or, that the paper was one upon which a motion could be made.

*Dunn,* for plaintiff in error.

*Gayle,* contra.

COLLIER, C. J.—The view we take of this case makes it unnecessary to consider whether the record discloses the facts essential to the regular exercise of jurisdiction upon notice and motion; besides, the law on this subject may be understood as settled by the decisions of this court—(Duncan vs. Tombeckbee Bank, 4 Porter's R. 181; Bates vs. Planters' and Merchants' Bank, and Lea & Langdon vs. the Branch Bank at Mobile, decided at this term.)

The questions arising upon the bill of exceptions, are:

1. If the plaintiff endorsed the bill in question, with an understanding that it should be accepted by Horner,

Inge *vs.* the Branch Bank of Mobile.

Blocker & Co., and that understanding was communicated to the directory of the bank, previous to its purchase by the bank, is he liable on his endorsement?

2. Does the agreement between the directors of the bank, and Messrs. Adams & Taylor, (the acceptors,) that they should not be looked to for the payment of the bill, until the bank had exhausted, without success, the legal remedies against the other parties, operate to the discharge of the plaintiff?

1. The charge of the Circuit judge supposes that the plaintiff, with a view of enabling Messrs. Horner, Blocker & Co. to obtain money, endorsed the bill in suit, while it was blank as to its amount, time of payment and address, and entrusted it to John R. Blocker to perfect it, with the understanding that Horner, Blocker & Co. were to accept it. Taking these to have been the circumstances under which the plaintiff lent his endorsement, his agreement was to be liable as *an endorser*, if Horner, Blocker & Co. should become acceptors. He did not undertake for the punctuality of any other persons who might accept the bill, however willing he might have been to do so, had it been thought necessary to enable Messrs. Horner, Blocker & Co. to effect their purpose. But the plaintiff's liability cannot be ascertained by enquiring what he was willing to do, but the true question is, what was done by him?

In Powell vs. Waters, (17 Johns. Rep. 176,) the note was made with an expectation that it would be discounted at *bank*, but it was negotiated to a third person. The endorser resisted a recovery, on the ground that the note was not disposed of, as it was intended—but the

8 P.                    15

court held that the inducement to the defendant's endorsement was to raise money for an object of which he was aware—that though it was expected to sell the note to the bank, yet there was nothing said or done to induce a belief on the part of the endorser, that if the bank declined purchasing, the note would not be put in circulation. That case bears no analogy to the present—there, it was not understood that the *bank* was the only source from which the money could be obtained—it was expected to be had there, but if the application was unsuccessful, the note might be negotiated to some one else. In the case at bar, it was understood that Horner, Blocker *&* Co. were to accept the bill, and if so understood by the plaintiff, it could not be put in circulation without their acceptance, but in violation of his understanding.

It is true, if the understanding between the plaintiff and Horner, Blocker & Co. was unknown to the directory of the bank at the time they discounted the bill, then it would be of no avail, and the plaintiff would be liable upon his endorsement, without reference to the circumstances under which it was obtained. It might, then, have been very well inferred by the bank, that the holder had an authority from the parties to the bill, to fill up all its blanks, and negotiate it in the usual course of business—(Chitty on Bills, 124; Putnam et al. vs. Sullivan et al. 4 Mass. R. 45.) And the plaintiff would also have been liable upon the principle, where one of two innocent persons must suffer from the act of a third person, he who has put it in the power of such third person to do the act, must be the sufferer. But if the bank had either a positive or constructive knowledge that the

Inge *vs.* the Branch Bank of Mobile.

plaintiff lent his endorsement, under an agreement either expressed or understood, that Horner, Blocker & Co. were to become acceptors, the plaintiff may avail himself of the breach of that agreement, as a defence to a recovery against him—(Brown vs. Mott, 7 Johns. R. 361; Humphries vs. Blight's assignees, 4 Dall. 370.)

It is no answer to say that Horner, Blocker & Co. would still be liable to the plaintiff, if he were to pay the bill, though not as acceptor, yet for money paid to their use. The plaintiff's understanding was, that the liability of Horner, Blocker & Co. should be primary, and appear on the face of the paper. Being thus situated, it is *possible* he may have thought, that they would have been more *strongly* urged to punctuality, in order to save their credit, than they would, had their undertaking been (as it is) indirect and secondary.

It should have been left to the jury to determine whether the plaintiff's endorsement was made with an agreement, either expressed or understood, that Horner, Blocker & Co. should accept the bill, and if there was such an agreement, whether it was known to the directory of the bank before they purchased it. The existence of *both* these facts, were quite sufficient for the plaintiff's defence—and in instructing the jury that if it was not intended to injure the plaintiff, and if he was not in fact injured, he was still liable, the judge of the Circuit court mistook the law.

2. A bill of exchange has usually three parties—the drawer—the drawee, (who after acceptance is the acceptor,) and the payee, (after endorsement the endorser)—(Chitty on Bills, 1, 19.) The acceptor is primarily liable

to pay the bill, and the drawer and endorser, if the proper steps are taken to charge them, are liable on his default—(Ibid. 182, 183.)   And in no instance is the endorser under any liability to the acceptor, unless it be in the case of an acceptance for his honor—(Ibid. 142.)

With a view to the solution of this question, Adams & Taylor must be considered as having become acceptors, with the knowledge and assent of the plaintiff, and the plaintiff be regarded in the nature of a surety for the performance of their engagement.—(Ibid. 292—and Theobold on Prin. & Surety, 180, *et post.*)

It is a well established rule, and repeatedly recognised in this court, that if the creditor, without the consent of the surety, make a valid agreement with the principal debtor, to prolong the time of payment, the surety will be discharged.—(Pyke vs. Searcy, et. al. 4th Porter, 61, and cases there cited.)   It is said there are two points of view in which, agreeing to give time to an acceptor, will discharge the indorser.   According to the one, the creditor, in prolonging the day of payment, is considered as having disentitled himself to proceed against the acceptor, until the time agreed to be given, has expired. Such an agreement is inconsistent with the obligation of a creditor to sue the principal debtor, at any moment when required by the surety to do so ; and the creditors, voluntary disablement of himself for the performance of any obligation which he is under to the surety, discharges the latter.   According to the other, the creditor is regarded as having, in point of good faith towards the debtor, obliged himself not to proceed against the surety ; because if he were to proceed against the sure-

ty, and the surety to pay, the surety would be instantly
entitled to his remedy against the debtor; and so, through
the *medium* of the surety he would deprive the debtor of
the time he had agreed to give him—and therefore, to
preserve good faith, he will not be allowed to proceed
against the surety.—(English vs. Darley, 2 Bos. & Pul.
61—Boultbee vs. Stubbs, 18 Ves. R. 20—Maltby vs. Cars-
tairs, 1 M. & R. 562, note—Bowmaker vs. Moore, 3 Price,
214—See also, Theobold on Prin. & Surety, 123, *et post*,
and 180 *et post*—Chitty on Bills, 289, *et post*.)

There is certainly no obligation to *active diligence* on
the part of the holder in suing the acceptor, and he may
forbear the employment of coercive measures as long as
he chooses, if he does not agree to give time so as to sus-
pend his remedy against the acceptor, to the prejudice of
the parties who are secondarily liable. And whether,
in giving time to the principal, a creditor may reserve
the right to sue the surety in the *interim*, is a question,
touching which, there is not entire harmony in judicial
decision, and as it does not necessarily arise, we decline
its examination.

As the record does not discover any objection to the le-
gal validity of the agreement between the directory of
the Bank and Adams & Taylor, or of the evidence by
which it was shown, we must intend that both the
proof and agreement were unexceptionable ; the more
especially as the Judge, in his charge, does not notice
any objection to either.

The record then, discloses that the directory of the
Bank agreed with Adams & Taylor that they would not
look to them for payment, until the legal remedies a-

Inge *vs.* the Branch Bank of Mobile.

gainst the other parties had been exhausted, without affecting a collection. True, the agreement not to sue, was for no definite period, yet the remedy of the Bank against the acceptors was necessarily suspended for six months, for it would have required that length of time (at the least) after the maturity of the bill, to have obtained judgments and had executions issued against the drawer and endorsers. The agreement then, brings the case clearly within the principle of the rule we have stated—and upon both grounds, the judgment must be reversed, and the cause remanded.