Carpenter v. Devon, et al.

## CARPENTER v. DEVON, ET AL.

1. The relation of principal and surety continues, even after the rendition of a judgment against them, so as to entitle the latter to insist upon his discharge when without his consent, the creditor agreed to indulge the former upon a sufficient consideration.

2. The surety alleged in his bill, that the creditor indulged the principal *without the complainant's consent*; the defendant answered, that the indulgence was given with the surety's consent: *Held*, that the negative averment was not only proper, but necessary, yet it was pleading what it was not incumbent on the complainant to prove, but the defendant should prove the reverse, and his answer would not be evidence to establish the fact for him.

WRIT of error to the Court of Chancery for Montgomery.

In June, 1842, the complainant filed his bill, stating, that Atkins McLemore and Anderson W. Mosely, in the circuit court of Montgomery, recovered a judgment against John W. T. Reid, for the sum of twenty-seven hundred and eighty-seven dollars and sixty-four cents, and costs; that the defendant in the judgment, together with the complainant and Edward Hanrick as his sureties, executed a bond; conditioned for the prosecution of a writ of error to the June term of the supreme court, holden in 1841; and the judgment of the circuit court was affirmed against Reid and his sureties.

It is further stated, that upon the affirmed judgment, an execution issued against Reid, Hanrick and complainant, and Reid made an arrangement with Wm. Devon, in which John Knox and Thomas Brown are equally interested, as complainant is informed and believes; by that arrangement, Devon agreed to pay the amount due on the execution, to McLemore and Moseley,

take an assignment of the judgment and execution, and allow Reid sixty days, within which to pay the same, the latter agreeing to pay to Devon for such indulgence, one or two hundred dollars in addition to the legal rate of interest—all which, it is alleged, was without the knowledge or consent of the complainant.— It is then charged, that Devon, under this arrangement, paid to the plaintiffs in the judgment, the amount due thereon, received an assignment of the same, and directed the execution to be returned, stayed by his order.

The complainant then alleges, that after the expiration of the sixty days, an *alias* execution issued upon the judgment against Reid, Hanrick and the complainant, and another agreement was then made between Reid and Devon (Brown and Knox being equally interested therein) by which the latter agreed to give Reid further indulgence upon the execution; but for what time, is unknown to the complainant. In consideration of this latter indulgence, Reid agreed to pay Devon at the rate of two and a half per cent. per month, on the amount of the execution; and in pursuance of such agreement, the execution was returned stayed by the latter—all which was without the knowledge or consent of the complainant.

It is alleged that Hanrick and Reid are insolvent, and that the former refuses to join with the complainant in this suit: *Further*, that Devon alone, or in conjunction with Knox and Brown, have caused another execution to issue, which they are about to levy on, and collect by a sale of the complainant's property. The bill prays an injunction so far as the complainant's property is concerned, against any execution issued upon the judgment against Reid, Hanrick and the complainant, that *subpoenas* may issue for McLemore, Mosely, Reid, Hanrick, Devon, Knox and Brown; and that such relief as is proper may be granted.

. The defendant Devon, in his answer, admits the recovery of a judgment by McLemore and Mosely against Reid; the prosecution of a writ of error by the latter, and the affirmance of judgment against him, and Hanrick and the complainant as his sureties; and that he did on the behalf of himself and his co-defendants, Knox and Brown, make the arrangement with Reid to pay the judgment, and allow him sixty days to satisfy the execution; for which Reid paid him the sum of three hundred and forty-two dollars and twenty cents. He positively denies that the arrange-

ment was made without the knowledge and consent of the complainant; but affirms the reverse to be true. He admits that the judgment was assigned to his co-defendant, Brown, but denies that he ever made any other agreement by which execution was suspended, than as above stated. It is stated, that after or about the time an alias execution issued, N. E. Bensen, trustee, in a deed executed by Reid to secure the debts and liabilities of the latter, advertised some of the property embraced therein, to be sold on the 14th of February, 1842; on that day the trustee wished to postpone the sale, with the view of obtaining a better price, and this defendant, for himself and Knox, signed a paper requesting the sheriff to stay proceedings for the present, on the execution against Reid and his sureties. This instruction was given without any consideration, which would have prevented him from pressing the execution at any time. The defendant admits, that another execution has issued on the judgment, that Reid and Hanrick are both insolvent, and avers that the former was, at the time the judgment was assigned. He concludes his answer by demurring generally to the bill.

The answers of Knox and Brown, are substantially the same as Devon's, save only that they answer to a great extent, upon information derived from others, and their own belief.

Mosely answered the bill, admitting the assignment of the judgment, but declaring his ignorance of the matters alleged, which affect his co-defendants. Hanrick denies all knowledge of the several matters in controversy, &c.

The depositions of several witnesses, as well as other testimony, appear in the record. These, with the exception of Reid, show the recovery of the judgment as stated in the bill, its affirmance by the supreme court against Reid, Hanrick and the complainant; and that an execution issued against them, which the former, by an arrangement with Devon, as stated in the answer of the latter, caused to be stayed. It is further shown, that Devon, Knox and Brown, with other judgment creditors of Reid, caused an alias execution, which issued on the judgment in question, to be stayed, and for that purpose, gave an order to the sheriff on the 14th February, 1842. But it is not shown by any evidence, that the complainant did or did not, assent to the indulgence that was given to Reid.

The deposition of Reid, was taken at the instance of the com-

plainant, although Devon, Knox and Brown, objected to it, on the ground that he was a party to the suit. Witness denies that he is a party, and insists that his interest in the event of the cause, as between the complainant and the three defendants last named, is balanced. He states that about the period the first indulgence expired, viz; about the 13th January, 1842, the execution was stayed for the further term of sixty days, for which he has paid Devon the same sum paid for the previous stay; the aggregate of which several sums amount to $684 40, which was deducted from the proceeds of witness' cotton crop. No consideration was paid for the order given to the sheriff on the 14th of February, 1842.

It appears from the evidence, that Reid had not property which could be sold under execution after February, 1841.

The chancellor was of opinion that the allegation in the bill, that the indulgence given to Reid, was without the complainant's knowledge or consent, was material, and such as the defendants were bound to answer; and that the answers of Devon, Knox and Brown, were conclusive upon the point, as they were not disproved by the evidence in the cause. *Further*, although the complainant was a surety in the bond for a writ of error, yet, after the judgment was affirmed against him, he became a principal, and a contract with Reid, by which the latter obtained a longer time than the law allowed to satisfy the judgment, would not discharge him; that if the complainant had satisfied the judgment, it would be extinguished, and he could not consequently enforce it, in order to reimburse himself. The chancellor then concluded, 1. That the bill does not contain sufficient matter to warrant the interference of equity. 2. Conceding that the case could be entertained, it was not made out by proof. It was, therefore, adjudged and decreed, that the bill be dismissed with costs.

T. WILLIAMS, for the plaintiff in error. The relation of principal and surety, continues as well after as before judgment. [Clay's Dig. 206, § 23; 3. J. J. Marsh. Rep. 526; 2 Am. Eq. Dig. 403, § 16; 3. Bibb's Rep. 467; 10 Johns. Rep. 587; 5 H. & Johns. Rep. 234; 1 Dess. Rep. 214; 3 Leigh's Rep. 272; 1 Hill's N. Y. Rep. 652; 3 Munf. Rep. 417; 4 H. & Munf. Rep. 436; Rice's Eq. Rep. 283-4; 2 Stew't Rep. 63; 3 id. 14; 8 Serg't & R. Rep.

Carpenter v. Devon, et al.

452; 1 Dess. Rep. 409; 1 Penn. Rep. 149, 240; 7 J. J. Marsh.
Rep. 580; 5 Ohio Rep. 212; 3, Ala. Rep. N. S. 339.]

A surety who pays a judgment, is entitled in equity to have it as-
signed to him, and if the creditor places himself in a situation, that
he cannot make the assignment, the surety must be discharged.
[2 Vernon's Rep. 608; 3 Wheat. Rep. 520; 4 J. J. Marsh. Rep.
440; 17 Johns. Rep. 390–4; 10 Yerger's Rep. 310; 4 Leigh's
Rep. 625; 1 Stew't Rep. 262; 1 Story's Eq. 477–8–480–1.]

The statement in the bill, that the agreement to indulge Reid,
was without the knowledge and consent of the complainant, was
an immaterial averment which need not have been proved; the
answer of Devon, denying this allegation and asserting that the
reverse was true, is not evidence, because not responsive to a
material allegation.    [6 Porter's Rep. 182–3; 2 Ala. Rep. 215–6;
Story's Eq. Plead. 514, 435; Gresley's Eq. Ev. 288–9; 2 Phil. Ev.
477, 490–1; 1 Munf. Rep. 373; 1 Johns. Rep. 587; 1 Wash. Rep.
224; 3 Dana's Rep. 498; Hardin's Rep. 538; 6 Yerger's Rep.
113; 2 Johns. Ch. Rep. 92–3, and note; 1 H. & Gill. Rep. 11;
3 Monr. Rep. 367; 3 Cond. Eng. Ch. Rep. 335–9.]

The answer of Knox is defective, in not setting out the facts
from which it may be inferred, that the complainant was inform-
ed of, or consented to the arrangement.    In affirming that the
complainant had notice, &c. the answer goes beyond the allega-
tion.    [4 Stew't & P. Rep. 415; 1 Beatty's Ch. Rep. 277; 1 Moll.
Rep. 359; Story's Eq. Plead. 32, 653; 3 Cond. Eng. Ch. Rep.
339; 4 id. 327; 2 Ball. & B. Rep. 385.]    The bill does not assert
that the complainant's want of notice, was a matter about which
the defendants were informed.

Devon's answer is not evidence for Knox and Brown—if his
testimony was material, they should have taken his deposition.—
As it respects the answers of Knox and Brown, they do not state
facts from their own knowledge, and they will be overbalanced
by the testimony of a single witness.    [1 Bibb's Rep. 200; 4 id.
358; 1 Dana's Rep. 474; 1 Paige's Rep. 209; 5 Munf. Rep. 183;
4 J. J. Marsh. Rep. 213; 4 S. & P. Rep. 410.]

N. Harris, for the defendants.—The affirmance of the judg-
ment by the supreme court against Reid, Hanrick and the com-
plainants, destroyed the relation of principal and surety, and
made them all principals.    [18 Eng. C. L. Rep. 273; 1 Story's
Eq. 477, and cases cited in note 3; 5 Johns. Ch. Rep. 305; 3

Wheat. Rep. 520; 2 Bailey's Rep. 551; 2 Dev. Rep. 341; 4 id. 351, 529; 2 Iredell's Rep. 216; 4 Harrison's Rep. 112; 3 Ala. Rep. 310.] The law is the same, whether the party is a surety, technically so called, or merely an indorser. [Theobald on Prin. and Surety, 125; 4 Wend. Rep. 560; 8 Porter's Rep. 371.]

Devon was bound to answer the allegation, that Reid was indulged without the complainant's knowledge—he has denied it positively, and to entitle the complainant to a decree in his favor, he must disprove the denial. The answers of Knox and Brown, are made upon information and belief, and this is sufficient to throw upon the complainant the burthen of sustaining his bill.— [4 Johns. Ch. Rep. 65; 4 Paige's Rep. 368; 4 Ala. Rep. 60; 1 Cow. Rep. 712; 2 Conn. Rep. 11 Wend. Rep. 343; Harper's Eq. Rep. 197, 2 Stew't Rep. 301; 7 Ves. Rep. 587; 1 Wend. Rep. 583; 3 id. 552; 6 id. 22, 30; 3 Ala. Rep. 458.] The second indulgence to Reid, was without consideration, and the sureties cannot avail themselves of it as a discharge. [12 Wheat. Rep. 554.]

The evidence in the cause, so far from disproving the answers, tends strongly to sustain them.

COLLIER, C. J.—The material questions arising in this case, may be thus stated: 1. Does the relation of principal and surety cease upon the recovery of a judgment against them, so as to prevent the latter from insisting upon his discharge in consequence of an indulgence given to the former without his consent, under a contract with the creditor? 2. Where the bill filed by a surety states, that the creditor suspended execution upon his judgment, under a contract with his principal, without the sureties' knowledge or consent; and the answer denies that the indulgence was given without the complainant's knowledge or consent; and affirms the reverse to be true, on whom does the *onus* lie of proving the sureties' assent to the agreement?

1. In Lenox v. Prout, [3 Wheat. Rep. 520,] it was determined, that where a judgment has been recovered against the maker and indorser of a promissory note, the plaintiff may countermand execution, against the former, without exonerating the latter from liability. "And the reason," say the court, "is obvious; for, by the judgment, they have both become principal debtors, and if the indorser suffers any injury by the negligence of the judgment creditor, it is clearly his own fault, it being his duty to

pay the money, in which case he may take under his own direc-
tion, the judgment obtained against the maker." [See, also, 18
Eng. C. L. Rep. 273.] So in Bay v. Tallmadge, [5 Johns. Ch.
Rep. 305,] it was decided, that after judgment against bail, their
character of surety is at an end, and they cannot claim any ad-
vantage of the creditor, on the ground of a want of due diligence
in prosecuting the principal debtor, or giving him indulgence upon
a valid consideration. We might add other citations in accord-
ance with those made, but this is entirely unnecessary, as will be
seen from the view we take of the case.

In The Commonwealth v. Miller's Adm'rs, [8 Serg't & R.
Rep. 452,] the court said, "there is no clearer rule in equity, than
that where the creditor has the means of satisfaction in his hands,
and chooses not to retain it, but suffers it to pass into the hands
of the principal, the surety can never be called on." *Again:*
"But it is said, the distinction between principal and surety ceases
after judgment has been obtained on the original security, and
that as to subsequent transactions, equity views them with equal
favor. If that be so, I am ignorant of any authority that bears it
out; and on the ground of reason, it certainly cannot be support-
ed. The distinction is carried throughout." So it has been held,
that a stay of execution by a creditor, after a levy of it on the
property of the principal will exonerate the surety, if the lien re-
sulting from the levy be extinguished, and the surety did not ap-
prove of the indulgence. *And further,* that the discharge of the
surety is not less complete, though the property levied on was
insufficient to discharge the whole debt. [Sneed v. White, 3 J.
J. Marsh. R. 526.]

The indulgence of the principal to the prejudice of the surety,
by one of several equitable proprietors of an execution, it seems
would operate a release of the surety, to the extent of the inter-
est of the party indulging. [Givens v. Briscoe, 3 J. J. Marsh.
Rep. 534.] And it has been also determined, that the stay, by
the creditor, of an execution levied on the property of the princi-
pal debtor, without the privity or consent of the surety, will dis-
charge the latter. [Jones v. Bullock, 3 Bibb's Rep. 467. See,
also, Solomon v. Gregory, 4 Harrison's Rep. 112.]

In Comegy's and Pershouse v. Booth and Bell, [3 Stew't Rep.
14,] no distinction was attempted to be made between the rights
of a surety, before and after a judgment against the principal and

Carpenter v. Devon, et al.

himself; and in that case, the surety was released, because time was given to the principal after a judgment had been rendered upon the original security. In fact, it has been the understanding, both of the bench and the bar in this State, (as indicated by several adjudged cases,) that the relation of the parties continues as it was in its inception, notwithstanding the recovery of a judgment. Such would appear to be the conclusion of reason, and we believe is well sustained by authority. It may be also remarked, that the legislature seem to recognize this to be the rule of law, for the act of 1811, "to empower securities to recover damages in a summary way," enacts that, "when an execution may issue against any principal and security, on any bill, bond, note, or other instrument, the sheriff, or other officer, shall levy on the property of the principal first, if he has any property in the county where the security resides, &c." [Clay's Digest, 206, § 23.]

2. It is conceded, that an affirmative allegation in an answer irresponsive to the bill, but in avoidance of some statement, cannot be regarded as evidence for the defendant. But it is insisted, that as the complainant has negatively averred his ignorance of the agreement between Devon and Reid, by which time was given to the latter, and has denied that he assented to it, the answer of Devon in affirming the reverse to be true, is responsive to the bill, and unless disproved according to the rule recognized in chancery, must prevail. The justness of this conclusion must depend upon the fact, whether the complainant's case could be aided by any answer that could be made to the allegation. Mr Justice Story says, "one test of materiality, is to ascertain whether, if the defendant should answer in the affirmative, the admission would be of any use to the plaintiff in the cause, either to assist his equity, or to advance his claim to relief. If it would, it must be answered, for it is material; if not, it is immaterial, and need not be answered." [Story's Eq. Plead. 655.] Again, says the learned author, "every bill presents a statement of facts, and a claim of right on the part of the plaintiff, in regard to which, he seeks relief; and it further seeks a discovery from the defendant, in order to establish or aid in the proof of such facts and claim of the plaintiff. Now to such discovery, at least so far as the facts and claim constituting the plaintiff's case are concerned, he has an unquestionable right. The rule has been laid down by a very

able writer in the following terms. "It is the right as a general rule of the plaintiff in equity (as we have seen) to examine the defendant upon oath, as to all matters of fact, which being well pleaded in the bill, are material to the proof of the plaintiff's case, and which the defendant does not by his form of pleading, admit." [Id. 514, 435.]

It would not be a good plea for a surety sued at law, to allege that the creditor under a contract with the principal debtor, had extended the day of payment; but it should go farther, and aver that the indulgence was given without the consent of the defendant. This point was expressly so adjudged in the Bank of Steubenville v. Carroll's adm'rs, [5 Ohio Rep. 207.] And as both facts must concur in order to perfect the defence, it would seem to be unquestionable upon principle, that the plea should be sufficiently broad to embrace them in its allegations.

Now, although it is a general rule that the *allegata* and *probata* must correspond, and that a party need not allege more than he is bound to prove; yet the rule is not of universal application.— Sometimes a party is required to negative the existence of a fact, the *onus* of proving which, rests upon his adversary. And such is the case where the surety sets up as a defence, an extension of the time of payment by the creditor, to his principal. The case of Everett, et al v. The United States, [6 Porter's Rep. 166,] maintains, that where the surety proves that time was given to the principal, it is incumbent upon the creditor to show, that the former assented to it; and that such an inference cannot be indulged in the absence of proof. And that such is the law, is the clear deduction both from principle and authority. The party averring the non-existence of a fact will not as we have seen, be always bound to support the allegation by evidence—in fact, the difficulty of establishing a negative, will sometimes relieve him from the necessity; and in other cases, the justice of requiring the opposite party to show the affirmative, if it be true, will throw the *onus* upon him. [2 Phil. Ev. C. & H's notes, 483-4-5-6-7; The State v. Gaus, 9 Porter's Rep. 633; Blann v. Beal, 5 Ala. Rep.]

Now, if it is necessary to allege in a plea at law, that the surety did not consent that the principal should be indulged, it must be equally essential to a bill where the surety seeks relief in equity to make such an allegation. But this averment is necessary,

only to prevent a demurrer from being successfully interposed; and when the surety has proved that time was given to the principal, it is (as at law) incumbent upon the creditor to show that the former assented to it.

The defendant, Devon, need not have answered the negative averment of the bill, and his answer cannot, in this respect, be received as evidence against the complainant; because, if he had answered in the affirmative, the admission would not have been of any use to the plaintiff, "either to assist his equity, or to advance his claim to relief," or in any manner material to the proof of his case—though it may have estopped the defendant.

The case of the Branch Bank at Huntsville v. Marshall, et al. [4 Ala. Rep. 60,] is not analogous in principal with the case before us. There, the bill perhaps stated more than was necessary to give the court jurisdiction, or to present the complainant's case fairly; yet, the unnecessary allegation was pertinent, and so stated as to make it a material part of the plaintiff's case. Its admission by the defendants would have relieved the complainant from what, by the frame of its bill, it had undertaken to prove— in fact, it was an allegation that required an answer.

Our opinion upon both the points made, is, that the chancellor erred; the decree of the court of chancery is consequently reversed, and although, perhaps, a final decree might be here rendered, we think it the safer course, and accordingly, direct that the cause be remanded.