## CALLER v. VIVIAN, ET AL.

1. Where the holder of a note agrees to transfer a judgment obtained by him against the maker, if the indorser will confess a judgment for the sum for which he was liable, his subsequent refusal to transfer, is no ground to file a bill to compel him to do so, in the absence of the allegation by the indorser, that he has paid the judgment so confessed ; as the payment of the money, and not the form of confession, is the essence of the contract.

2. The discharge by the holder of a note, of slaves of the maker sufficient to pay the debt, seized under an attachment at his suit, does not operate in law or in equity to relieve the indorser.

Caller v. Vivian, et al.

Writ of Error to the Court of Chancery for the first District.

The case made by the bill is this:

In November, 1836, the complainant purchased from Flavel Vivian, who was the defendant's intestate, three slaves, at the price of $3,100, and in payment therefor indorsed to said Vivian, a note made by one Bullock, for $4,280, which was at maturity, on the 11th April, 1837. It was agreed between the parties, that when this note should be collected by Vivian, he would pay to the complainant the difference between the sum collected and the price of the slaves. When the note became due, it remaining unpaid, Vivian commenced a suit against Bullock, in the Circuit Court of Mobile county, and recovered judgment in his own name. Whilst this suit was pending, it was understood Bullock was in failing circumstances, and intended to remove his slaves out of the United States, information of which the complainant caused to be communicated to Vivian's attorney, who thereupon procured an attachment against the property of Bullock, which was levied on several slaves belonging to him of value more than sufficient to satisfy the debt due by said note. Soon after this levy, the attorney of Vivian caused it to be discharged, without the knowledge or consent of the complainant, and the slaves being returned to Bullock, he has since removed with them to Texas, by which the complainant has wholly lost his debt.

After it was ascertained that Bullock would not pay the note in any reasonable time, if ever, and the complainant being indorser of the note, and liable to Vivian for the price of the slaves, paid in cash a portion of the debt, and afterwards confessed a judgment in his favor for about $1,800. This payment was made and judgment confessed upon the express agreement that the one against Bullock should be tranferred to the complainant, and placed entirely under his control. Vivian died in 1839, and the defendants were soon afterwards appointed his administrators. The complainant applied to Thacker Vivian, one of the defendants, and the active manager of the estate, to transfer the judgment against Bullock, which he refused to do. The defendants attempting to coerce the judgment, confessed by the complainant, he files the present bill, praying that it may be set aside, and that the money paid by him to the intestate in his life-time, may be refunded, and for general relief.

The defendants answered the bill, and evidence was taken by the complainant, but it is unnecessary to set out the answer, or the testimony, as the bill was not heard on these matters, having been dismissed for want of equity. The dismissing the bill is assigned as error.

Phillips, for the plaintiff in error, insisted—

1. That Caller was entitled to be considered as a surety for Bullock, and the attachment of the slaves as a security for his benefit, the release of which operated as a discharge of the liability. [Hayes v. Ward, 4 Johns. Ch. 130; 3 Stew. 9; Ib. 160; 1 Stewart, 11.]

2. The agreement upon which Caller confessed the judgment was, that Vivian should assign the judgment previously obtained against Bullock.

Lesesne, for the defendants in error.

GOLDTHWAITE, J.—1. The equity supposed to arise out of the agreement between Caller and Vivian, previous to the confession of the judgment by the former, is not of that description which gives jurisdiction to a court of chancery. If the agreement was based on a sufficient consideration, the party has a clear legal remedy for its breach, and under ordinary circumstances, a court of equity will not interfere to compel the specific execution of a contract affecting personal chattels only. But if the power to grant relief was conceded in a case like this, the bill ought not to be sustained without an allegation that Caller had paid the debt, for which his liability, in this view of the case, is admitted, independent of the judgment. The payment of the money, and not the mere form of confessing the judgment, is the essence of the contract, to transfer that obtained against Bullock, and without this, it would be inequitable to ask the transfer.

2. The other point however, is the one here chiefly relied on; but although it is conceded, every indorser, is quasi a surety, yet we think the bill has no equity. The rule is, that if the holder of a security by a valid contract, gives the principal day of payment, then the surety is discharged. [Chitty on Bills, 447; Inge v. Bank, 8 Porter, 108; Pyke v. Searcy, 4 Ib. 61.] There is no obligation to active diligence, and the creditor may forbear

114

Caller v. Vivian, et al.

the employment of coercive measures as long as he chooses. [Inge v. Bank, before cited.] It is true there are some decisions which hold, that the release of the principal's property from execution, will enure to release the surety, but we do not well see why the creditor should-be bound to follow up proceedings when commenced, which he was in no manner required to commence in the first instance. Some of these cases are quoted by us, Carpenter v. Devon, 6 Ala. Rep. 718, but we do not understand that case as going further than the recognition that the condition of a surety continues, although the debt is reduced to a judgment; and that·even then a valid contract, giving day of payment to the principal, is good cause to enjoin a judgment against the surety. The recognition of a rule, such as is contended for by the plaintiff in error, would deprive the holder of securities of a great portion of that discretion in the management of suits, which is so important to be exercised, and throw on him the necessity of pursuing his debtor with the utmost severity, at the risk of losing his recourse on those who are collaterally bound. We are unable to ascertain any principle upon which such a rule can be based, for it seems clear, that the release of a levy in no way impairs the rights of a surety; if he pays the debt he has the entire control of the security, when he stands as indorser; or if otherwise, can at once proceed against his principal. It is certainly true that the discharge of a regular levy might be productive of injury to the surety, and so in most cases would be the dismissal of a suit, or the neglect to commence one. There is indeed no other principle than the one we have previously stated, and the facts of this case not being within it, the bill was properly dismissed.

This conclusion renders it unnecessary to consider the effect of the conduct of the complainant, in confessing the judgment when all the circumstances were known to him.

Decree affirmed.