## LYON v. BOLLING, ET AL.

1. Where several judgments against the maker and indorser of a promissory note are recovered by the same plaintiff, the payment of the judgment against the latter, does not annul that against the maker; but the indorser may be substitnted to it in equity, and have the advantage which it there affords for his reimbursement. If an execution has been issued and returned "no property found," he may go into Chancery to subject the equitable estate of the maker to the satisfaction of the judgment; or he may *resort to equity* to cause conveyances of real property to be set aside, which the defendant has made, or caused to be made in fraud of his creditors.

Writ of Error to the Court of Chancery sitting at Mobile.

THE plaintiff in error, who was complainant below, alledges in his bill, that the defendant, Thomas R. Bolling, on the 1st day of November, 1836, made his three several promissory notes, one at six, another at nine, and a third at ...... months after date; each for the sum of $1250, and all payable to the complainant. These notes were indorsed by the complainant, for the accommodation of the maker, and at his special instance and request; and thereupon the defendant passed them to Diego McVoy, in payment of the rent of the Mobile Hotel for one year.

When the notes became due and payable, the maker failed to provide for their payment: whereupon the first and sec-

ond notes were put in suit by the indorsee, who obtained judgments in the Circuit Court of Mobile county, against Bolling, as the maker, and the complainant as indorser; both of which judgments against the indorser were satisfied by the complainant, after a return of "no property found," upon executions against the defendant's estate. The third note was paid by the complainant without suit, and is now in his possession. All which several sums thus paid, amounted, at the time of filing the bill in this cause, to the sum of $4332 83 with interest, &c.

It is also alledged, that the defendant purchased of Audley H. Gazzam, a tract of land, particularly described in the bill, on which he now lives, situated in Mobile county, that the defendant has made full payment for the same, and caused a deed to be executed by Gazzam, on the 10th December, 1842, to his son, Thomas T. Bolling, instead of himself, who was the real purchaser. That at the time the purchase money was paid, the grantee in the deed was an infant, had no estate, either by inheritance or otherwise, distinct from his father, and consequently the means of purchase were all provided by the defendant; that defendant took possession of the premises, shortly after his purchase, and has occupied them ever since—making extensive and valuable improvements thereon.

Complainant explicitly charges, that in causing the deed to be executed by Gazzam to Thomas T. Bolling, the defendant intended to hinder and delay his creditors; and that the transaction was a direct fraud upon the complainant, to whom the defendant was, and still is, largely indebted. The defendant and his son refuse to give up the land to be sold for the payment of the several sums advanced by the complainant for the former, as above stated, although the defendant has no other property within the complainant's knowledge, "out of which he can make the amount of the said judgment and notes."

The bill prays process of *subpœna* against Thomas R. and Thomas T. Bolling, and Audley H. Gazzam, that each of them may answer the same; that the deed from Gazzam to Thomas T. Bolling may be delivered up, cancelled and set aside, and the land therein described, with its appurtenances,

may be sold to satisfy what may be due the complainant; and that such other relief may be granted as may be just and proper, and the case may require.

T. T. Bolling answered, denying the allegations of the bill, so far as they impugned his title for fraud, and by his answer demurred.    T. R. Bolling filed a general demurrer to the bill, which the Chancellor adjudged to be well taken; and accordingly dismissed the bill, at the complainant's costs.

G. N. Stewart, for the plaintiff in error, insisted, that by the payment of the judgments which McVoy recovered against the defendant, the complainant was subrogated to the rights of McVoy, and the liens consequent upon them.    [1 Story's Eq. 477.]   It is admitted that it has been said, the right of cession only exists where the surety discharges a collateral contract, and will not survive the extinction of the obligation of the principal debtor.    [3 Mylne & Keene's Rep. 183.]   But this qualification is not supported by the later American authorities.    [4 Rand. Rep. 444-5-7; 2 Call's Rep. 103, 125; 1 Dess. Rep. 409; 2 Brock. Rep. 159; 12 Wheat. Rep. 594.]   The contracts of the complainant and defendant, though connected, are each distinct and perfect contracts, and the payment of that which is consequential will not, as against the indorser, extinguish the primary undertaking.    [3 M. & K. Rep. 183; Story on Bills, 497.]   The notes being reduced to judgment, they are merged, and the indorser is entitled to control the judgments. [Story on Prom. Notes, 502.]   It was not necessary that the judgments should have been assigned to give to the complainant the benefit of them.    [1 Dess. Rep. *supra;* 12 Wheat. R. *supra.*]   If Chancery had jurisdiction as to the two notes on which judgments were recovered, in order to do complete justice, a decree might be rendered in favor of the complainant as to the third.    The fact that McVoy was not a party to the bill, did not authorize its dismissal generally, but it should have been dismissed without prejudice.    As to the main point, see 10 Leigh's Rep. 394; 11 Ohio Rep. 451; 12 Id.

J. A. CAMPBELL, for the defendants in error. The payment of the judgments to McVoy extinguished them, and a court of equity will not revive them. If the complainant had desired to avail himself of these judgments against the defendant, T. R. Bolling, he should so have stipulated with McVoy when he paid them. [Pitman on Prin. & Surety, 115; 3 Stew. Rep. 259; 10 Johns. Rep. 555; 8 Pick. Rep. 48; 2 Wend. Rep. 369.] The doctrine of substitution only applies as respects subsidiary securities; consequently does not embrace the present. [1 Am. Dig. 393, § 7; 2 Ala. R. 689; 3 Id. 303; 7 Id. 318.]

COLLIER, C. J.—It may be conceded, notwithstanding some adjudications to the contrary, that if a surety discharges a judgment rendered against himself and principal jointly, the judgment is satisfied, and its legal efficacy destroyed. [1 Turn. & Russ. Rep. 230; 4 Russ. Rep. 277; 2 Mad. R. 464; 3 Mylne & K. Rep. 183; Foster v. The Athenæum, 3 Ala. Rep. 302, and cases there cited.] But in the case at bar, several judgments were rendered against the maker and indorser of notes, and the judgments against the latter were paid by himself; the question is, whether, by these payments, the judgment against the maker of the notes became *functus officio;* or was their vitality suspended, subject to be resuscitated whenever the indorser should seek their enforcement, with the view of reimbursing himself?

It was said by Lord Eldon, in the case of Craythorne v. Swinburne, 14 Ves. Rep. 162, that "a surety is entitled to every remedy which the creditor has against the principal debtor, to enforce every security, and all means of payment; to stand in the place of the creditor, not only through the medium of contract, but even by means of securities entered into without his knowledge, having a right to have those securities transferred to him, though there was no stipulation for it; and to avail himself of all those securities against the debtor." This very just and comprehensive statement of the law has been often reiterated, not only by the text writers, but in adjudged cases. [2 Brock. Rep. 159, 252; 1 Hill's Eq. Rep. 275; 3 Sumner's Rep. 410; Pitman on Prin. & Surety, 113; Cullum v. Emanuel & Gaines, 1 Ala. R. 23,

and cases there cited.    But the authorities do not all agree as
to the extent to which the doctrine of substitution shall be
carried, in favor of a surety.    Hodgson v. Shaw, 3 Mylne
& K. Rep. 183, which professedly conforms to Copis v. Mid-
dleton, 1 T. & Russ. Rep. 224, determines, that the surety
who pays the debt of his principal, can only claim for his re-
imbursement such securities as continue in force against the
principal debtor, and do not go back to him upon payment
by the surety.    Both these decisions affirm, that if the prin-
cipal debtor mortgages an estate to the creditor, as a collate-
ral security for his debt, in addition to a bond given to the
creditor, by the principal, to which the surety is a party; al-
though the surety cannot, upon the payment of the money
due, call upon the creditor to assign the bond, yet he has a
right to stand in the place of the mortgagee, in respect to
the mortgaged estate, which has not "got back" to the debt-
or, and compel him to assign the same.    The reason the
payment of the debt did not extinguish the mortgage, (which
we have frequently held to be merely accessorial,) *Lord El-
don* said, was, because the payment did not, as in the case of
a bond, extinguish the security without a reconveyance;
consequently there was something to assign or transfer. [Copis
v. Middleton, *supra.*]

In Watts v. Kinney, 3 Leigh's Rep. 272, the right of sub-
rogation has perhaps been carried as far as in any other case
that has fallen under our notice.    There, a judgment was re-
covered against the principal and his sureties, but no *elegit*,
or other execution, was sued out within the year; the sure-
ties satisfied the judgment.    *It was held*, that the sureties
had a right to be substituted in equity to the benefit of the
lien of the creditor's judgment, upon the lands of the princi-
pal, in preference to a foreign attachment, sued out by anoth-
er creditor, after the judgment was obtained.    Favorable as
this case is, to the interest of sureties, it is very fully sus-
tained by Worthington v. Ferguson, 4 Har. & Johns. Rep.
522, and Creager v. Bengle, 5 Id. 234.]

In Clason v. Morris, 10 Johns. 526, certain persons as sure-
ties, indorsed the note of their principal; suit was brought
against the principal by the indorsee, who recovered a judg-
ment, and afterwards sued the indorsers and obtained a judg-

ment against them also. The indorsers paid the plaintiff the amount of the debt, and an assignment was made of the judgment against the principal. The court decided, that the indorsers stood in the place of the indorsee, and might avail themselves of the judgment in his favor to recover the money paid by them, from their principal. To the same effect is Brahan & Atwood v. Ragland, et al. 3 Stewt. Rep. 247.

It has been held, that where one person gives his own bond for duties on goods imported by another, and afterwards discharges the same, although the obligor cannot be placed in the condition of the United States in a claim against the importer, under the act of Congress, yet upon general principles of equity, the obligor will be substituted in the place of the United States as a creditor, and entitled to the same preference in respect to other persons. [Enders v. Brune, 4 Rand. Rep. 438.]

We think it clearly inferable from the principles stated, that an indorser, by satisfying a judgment against himself, does not necessarily destroy one that has been rendered against the maker of the same note. The indorsement was in itself a substantive contract, consequential to the making of the note ; the judgments were several, and the indorser, as between himself and the maker, liable only, in the event that the latter was unable to pay. True, the holder of indorsed paper, though he recover several judgments against the parties to it, is entitled to but one satisfaction, yet it does not follow, that if the indorser satisfy a judgment against himself, that he is not entitled to enforce in the name of the holder judgments obtained by the latter against the previous parties, for the purpose of reimbursing himself. Perhaps in such case, the right of substitution could only be made available in equity, as a court of law might not, consistently with its principles, look into the equities of the parties, and if an execution were issued on the judgment against the maker, would probably quash it, upon the allegation that the plaintiff had received one satisfaction of the indorser.

Upon the payment of the judgment by the indorser, the maker would not be entitled to receive the note; that, according to our practice, would remain in the files of the court

rendering the judgment, subject to be withdrawn by leave of court, by one who proposed to use it for a legitimate purpose. The judgment against the maker, would be no more discharged by the mere fact of payment of the judgment against the indorser, than would a mortgage which had been taken as a collateral security. In the former, satisfaction should be entered of record, or evidenced in some other manner; in the latter, to reinvest the mortgagor with the title, a reconveyance, or some other equivalent act is necessary.

To show that a payment by the indorser, does not necessarily annul the judgment against the maker, the cases of Clason v. Morris, and Brahan & Atwood v. Ragland, et al. *supra*, are conclusive authority. There it was held allowable to continue its vitality, by an arrangement between the indorsee and indorser, by which the former assigned it to the latter.

We deduce from this course of reasoning, the right of the indorser, upon paying a judgment recovered against himself, to be substituted in equity to a judgment in the name of the same plaintiff against the maker of the paper. And if, in such case, an execution has been issued and returned "no property found," he may go into Chancery to subject the equitable estate of the defendant, to the satisfaction of the judgment. See Roper v. McCook and another, 7 Ala. Rep. 318. For the same purpose he may resort to equity to cause conveyances of real property to be set aside, which the defendant has made, or caused to be made, *in fraud of his creditors.*

In respect then to the two notes on which judgment was recovered, the bill makes out a proper case for equitable interposition. Whether in view of the insolvency of the defendant at law, the jurisdiction being thus far unquestionable, it would not be competent if there should be an excess arising from the sale of property found liable to the judgments, to direct its appropriation to the payment of the note on which no suit has been brought, we need not now consider.

It results from what has been said, that the decree dismissing the bill must be reversed, and the cause remanded.