FAWCETTS *vs.* KIMMEY.

[BILL IN EQUITY BY SURETY FOR FORECLOSURE OF MORTGAGE TO CREDITOR.]

1. *Surety's right of subrogation.*—A surety, having paid off the debt, is entitled to stand in the place of the creditor, and to have a mortgage foreclosed, which was given by his co-surety, at whose request he became bound, as well for the security of the debt, as for his indemnity against liability.

2. *Cancellation of deed.*—The mere cancellation of a deed does not divest the title of the grantee, nor does it enable the grantor, by a subsequent conveyance, to pass the title to one who is not shown to be a *bona-fide* purchaser or incumbrancer without notice of the canceled deed.

3. *Conflicting liens of mortgage and judgment.*—The lien of a judgment on land is superior to that of a mortgage executed by the debtor after the rendition of the judgment; and a purchaser at sheriff's sale under the judgment consequently acquires a title superior to that of any one holding under the mortgage.

4. *Equitable title not subject to levy and sale at law.*—Under the law existing in this State prior to the adoption of the Code, the equitable title of a purchaser of land, who had paid the purchase-money, but had not received a conveyance, could not be sold under execution at law against him.

APPEAL from the Chancery Court at Troy.

Heard before the Hon. WADE KEYES.

THIS bill was filed by David P. Fawcetts, against Seaborn C. Kimmey, M. C. Kimmey, John Lindsey, Alfred Holley and others. Its material allegations were, that the complainant, on the 6th January, 1850, at the solicitation and request of Seaborn C. Kimmey, became jointly bound with said Seaborn as surety of John M. Kimmey, on several promissory notes due and payable to John Lindsey, which amounted in the aggregate to nearly $1,000; that Seaborn Kimmey, on the same day, executed a mortgage to said Lindsey on a tract of land of which he was then seized and possessed, as well to secure the payment of said notes, as to indemnify complainant against loss by reason of his said suretyship; that this mortgage was duly recorded; that Lindsey afterwards recovered judgments on said promissory notes, as they severally fell due; that complainant was compelled, in

consequence of the insolvency of said Seaborn and John M. Kimmey, to pay off and satisfy these judgments; and that Lindsey had "given up" to him the said mortgage. The prayer of the bill was, that the complainant might be subrogated to all the rights which Lindsey had under said mortgage, and for general relief.

Alfred Holley, who was made a defendant on an allegation that he claimed an interest in said lands, filed an answer to the bill; setting up title to the lands embraced in the mortgage, under a purchase made by him at sheriff's sale, on the 1st Monday in February, 1851, under an execution against John M. Kimmey, issued on a judgment recovered against him by the Branch Bank at Montgomery; and alleging that Seaborn Kimmey, at the time said mortgage was given, had no title to the lands thereby conveyed, but that the title thereto was in John M. Kimmey. The facts connected with the title to said land, as alleged in Holley's answer, are stated in the opinion of the court, and, therefore, need not be here detailed.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, and his decree is now assigned as error.

Pugh & Bullock, for the appellant.

C. Cunningham, contra.

RICE, C. J.—From the pleadings and proof it appears, among other things, that at the request of S. C. Kimmey, and upon the faith of the mortgage of the lands in controversy executed by him on the 6th day of July, 1850, the complainant became co-surety with him, for John M. Kimmey, on the notes mentioned in the bill and in the mortgage; that the mortgage was executed as well to save complainant from loss, as to secure the payment of said notes to the payee, Lindsey; that the said S. C. and John M. Kimmey are insolvent; and that the complainant, under legal coercion, has paid off the debt evidenced by said notes. If these were the only facts appearing in the pleadings and proof, the complainant would upon them be entitled to a decree for the sale of the lands, and an application of the proceeds of the sale to his reimburse-

ment in the premises, upon the principle that the surety, who has paid the debt of the principal, is entitled to stand in the place of the creditor, as to all securities for the debt held or acquired by the creditor, and to have the same benefit from them as the creditor might have had.—Cullum v. Emanuel, 1 Ala. 23; Brown v. Lang, 4 Ala. 50.

But this right of the complainant, which is founded on the mortgage of the lands executed by S. C. Kimmey on the 6th day of July, 1850, is opposed by a defense founded on a sale of the same lands by the sheriff made in February, 1851, under a judgment obtained by the Branch Bank at Montgomery, in the circuit court of Montgomery, against John M. Kimmey and others, on the 19th November, 1844.

To determine the effect of this defense, it is necessary to ascertain the origin and nature of the title of S. C. Kimmey and of John M. Kimmey to the lands. It seems to be clear that, up to the 7th day of December, 1849, neither of them had ever had any title, either legal or equitable, to the lands; that up to that day the *legal* title was in L. W. Carroll and S. Reid; and that on that day, the said L. W. Carroll and his wife executed a deed, conveying to John M. Kimmey the lands, which deed, on proof of its execution by the subscribing witness, was recorded in the proper office on the 29th July, 1850. A copy of that deed, of the proof of its execution by the subscribing witness, and of the date and fact of its being recorded, is set forth as "exhibit A" to the answer of the respondent Holley to the original bill; and the execution of this and all the other exhibits to the bill and answers, as well as the due record of all the deeds and mortgages as shown by the exhibits, is broadly admitted in the written agreement of the solicitors of the complainant and respondents contained in the record. It further appears, that up to the 18th day of June, 1850, S. C. Kimmey never had any title or evidence of title to said lands; that on that day, a deed was executed by L. W. Carroll and his wife, and by S. Reid and his wife, conveying the said lands to him; and that this conveyance to him was made, not in

consideration of any contract or payment made by him, but in consideration of the contract and payment made by his father, John M. Kimmey—the same contract under which the prior deed had been executed to John M. Kimmey by L. W. Carroll and his wife.

Something is said in the record as to the cancellation of this prior deed—the deed to John Kimmey. But the complainant does not, in his bill, or otherwise, make it appear that either he or the mortgagee, Lindsey, is a *bona-fide* purchaser or incumbrancer without notice of that deed, the execution of which stands admitted by his solicitor upon the record. And therefore we need not decide, whether the alleged cancellation of that deed is proved or not; for, conceding it to be canceled as alleged, its mere cancellation did not divest the title which had passed by the deed, nor revest it in the grantor, nor enable the grantor, by a subsequent deed, to pass that title to one who does not place himself in a better position than that in which the record places the complainant. Mallory v. Stodder, 6 Ala. 801, and authorities there cited; Doe, *ex dem.* Nickles v. Haskins, 15 Ala. 619.

The deed of L. W. Carroll and wife to John M. Kimmey vested in him *the legal title* which the said L. W. Carroll then had to the lands—that is, *the legal title to an undivided half interest in the lands,* leaving the legal title to the other undivided half in S. Reid. Upon the execution of that deed, the legal title to the undivided half which passed thereby to John M. Kimmey, became subject to the payment of the aforesaid judgment of the Branch Bank against him and others; and this legal title of his to the undivided half passed to the purchaser at the sale made by the sheriff under that judgment.—Clay's Digest, 205, § 17; Doe, *ex dem.* Nickles v. Haskins, 15 Ala. 619; Forrest v. Camp, 16 Ala. 642. The lien of that judgment, being older than the mortgage executed by S. C. Kimmey, and older than any title or claim on his part to the lands, must prevail over the mortgage, as to the undivided half which passed to John M. Kimmey by the deed of L. W. Carroll and wife; and the purchaser at the sheriff's sale is entitled to the benefit of that priority.—See cases *supra,*

and Daniel v. Sorrells, 13 Ala. 436; Crutchfield v. Hudson, 23 Ala. 303.

But the mere *equitable* title of John M. Kimmey, to any part of the lands, could not, in 1851, and before the Code went into effect, be sold under execution from a court of law.—Doe, *ex dem*. Davis v. McKinney, 5 Ala. 719; Paulling v. Barron, Meade & Co., 32 Ala. 9. It is clear, therefore, that the defense founded on the sheriff's sale extends only to *the legal title which he had to the undivided half of the lands*. And we see nothing in the record which bars the complainant of the right to have a decree for the sale of the other undivided half, and the application of the proceeds of the sale thereof to his reimbursement.

Decree reversed, and cause remanded.