# Knighton *et als. v.* Curry *et als.*

### Bill in Equity for Subrogation.

1. *Revised Code, § 495; character and extent of lien declared by.*—The lien created by § 495 of the Revised Code, is not like that of an execution, a mere legislative remedy; but the bond of the tax collector being a contract by which the law had previously declared liens should be created, such lien is a lien by contract, so far as all parties to the bond are concerned. The lien operates as a mortgage in all respects, except that it confers no rights which can be en-

[Knighton et als. v. Curry et als.]

forced at law, and can be carried into effect, as a specific lien, only in a court of equity.

2. *Same ; what lien created by, not dependent on* —It is not necessary that the amount of the default of the tax collector should have been ascertained by a judgment at law ; such default may be ascertained and determined, and the lien enforced, by a proceeding in equity.

3. *Same; right of sureties to be; subrogated to rights of State or county, as to lien declared by.*—The sureties of a defaulting tax collector, who have been compelled to make good the default of their principal, are entitled to be subrogated to the rights of the State or county, and to have the lien created by the bond in favor of the State or county enforced for their indemnity ; and this, though the collector, who was absent from the State, was not proceeded against by the State or county, and the sureties *paid* the judgment against them for their principal's default : and such lien attaching from the execution of the bond may be enforced against the property of their principal in the hands of the purchasers, who are charged by law with notice of the lien.

4. *Surety ; what necessary to entitle to subrogation.*—Until a surety has paid the debt of his principal, he cannot be entitled to contribution, but it is not necessary that the payment should have been made in money ; whatever discharges the principal from liability to the common creditor, and is accepted by him as a payment, will operate as such in payment by the surety.

5. *Case criticised.*—The definition given in *Perrine v. Fireman's Ins. Co.*, 22 Ala. 576, of the term *"means of satisfaction,"* is too narrow.


APPEAL from Choctaw Chancery Court.

Heard before Hon. A. W. DILLARD.

In February, 1869, one Joseph J. L. DuBrutz was appointed tax collector of Choctaw, and gave bond as such, with the appellees as his sureties thereon. At the time of his appointment, DuBrutz owned certain real estate, which is described in the bill. In November, 1870, DuBrutz sold and conveyed these lands to the appellants, who purchased with knowledge that he was tax collector, and have since been in possession. In 1872, suit was commenced by Reynolds, Auditor, for the use of the State, in the Circuit Court of Montgomery county, against the appellees as sureties of said DuBrutz, and a judgment was rendered against them in June, 1873, which they have paid. DuBrutz was not proceeded against, he having left the State.

At the fall term, 1874, of the Circuit Court of Choctaw county, motion was made against the appellees for the amount of the taxes due the county. A compromise was effected in the spring of 1876, the appellees compromising with the Commissioner's Court of Choctaw county, and gave their note in satisfaction of the amount agreed on.

The appellees now file their bill asking to be subrogated to the lien of the State and county, and that such steps as are necessary be taken to enforce said lien. A demurrer was interposed by the appellants, on the following grounds : 1. Because the lien upon the property of the tax collector is a specific, special lien for the sole benefit of the State and county, and to the benefit of which the complainants are in no wise entitled. 2. The bill fails to show any judgment in favor of the State

[Knighton et als. v. Curry et als.]

of Alabama, or the county of Choctaw, against said tax collector. 3. Said bill avers that said execution and judgment have been paid, satisfied and extinguished by said sureties, and there is no lien or grounds of equity in complainant's bill. 4. That the bill fails to show any valid legal judgment in favor of Choctaw county against said tax collector or complainants, as his sureties. 5. The bill fails to point out any specific default by said tax collector. 6. The bill shows no ascertained legal liability against said tax collector. 7. Said bill shows that complainants are simple contract creditors of said tax collector, and have no cause of complaint against these defendants in a court of equity. The court overruled the demurrers, and the defendants bring the case here by appeal.

THOMAS W. COLEMAN, for appellants.—Section 495 of the Revised Code, provides a lien in favor of the State and county, for the amount of any judgment that may be recovered against the tax collector in his official capacity. The same lien is reserved also against the sureties of the tax collector, from the date of his default. There was no judgment against the tax collector, and therefore no lien capable of enforcement by the State or county, and the sureties can stand on no higher ground. The judgment in favor of the State was paid and discharged before the filing of the bill. This judgment was never assigned to the sureties, but was absolutely extinguished. The lien created on the property of the tax collector is a special statutory lien, which cannot be extended. The lien is for the benefit of the State or county alone, and was never intended to protect or indemnify any other person. The cases cited by the appellees have no application to this case. They were cases of contract liens, and decisive of rights between the parties to these contracts. No such rights are involved.—See 36 Ala. 118; 14 Ala. 198; 3 Ala. 310; 1 Story's Eq. Juris. § 499; and 25 Ala. 258.

THOMAS COBBS, contra.—The payment of the judgment by the sureties, gave them, as against DuBrutz and those purchasing from him with notice, all the rights and securities of the sale, and they stand in the place of the State to enforce these remedies.—1 Ala. 23; 2 John. Ch. 554; 22 Ala. 782. A person taking any of the securities from the principal, with notice of his responsibility, is bound in equity to hold them for the indemnity of the sureties, and is subject to all the equities which the creditor could originally enforce. 33 Ala. 261; 23 Miss. 371; 27 Miss. 679; 1 Lead. Eq. Cases,

[Knighton et als. v. Curry et als.]

106. The right of subrogation does not depend upon any contract or request by the principal debtor, but rests upon principles of justice and equity.—4 John. Ch. 123 ; 1 N. Y. 595. The lien created by the statutes is an equitable mortgage, and the payment of the debt by the surety did not discharge the mortgage ; it simply took away the right of the State to sue the principal, and it still stands for the security of the sureties. They hold a lien under the mortgage, and may go into equity to enforce it without exhausting their legal remedies.—7 Ala. 318 ; see *Dallas County v. Timberlake,* 54 Ala. 403.

BRICKELL, C. J.—The Revised Code of 1867, § 495, declared the bond of a tax collector "operates from its execution as a lien in favor of the State or county, on the property of such tax collector, for the amount of any judgment which may be rendered against him in his official capacity, for State or county taxes, and on the property of his securities from the date of his default." The same provision was carried into the revenue law of 1868, which was of force when the appellees became sureties on the official bond of Joseph J. L. DuBrutz as tax collector for Choctaw county. Pamph. Acts 1868, p. 312, § 44. We had occasion to consider and pass upon this statutory provision in *Dallas County v. Timberlake,* 54 Ala. 403, and we held the lien it creates is not like that of a judgment or execution of a court of law, a mere legislative remedy, or the mere incident of a judgment, created by legislation, "but a tax collector's bond being a contract, by which the law has previously declared liens shall be created, its liens are liens by contract, on the part of the persons who execute the bond, as much as that of a mortgage would be. Such lien is intended, also, to be a security quite as effectual for the benefit of the State and county, from the time the lien operates, as a mortgage would be to a mortgagee, with this difference, that it would not, as a mortgage might, give a right of action at law, but can be carried into effect, as a specific lien, in a court of equity only." It was further held, the lien was not dependent on obtaining a judgment at law, ascertaining the amount of the default of the tax collector, but that the default could be ascertained and determined, and the lien enforced by a proceeding in equity.

The particular question now presented, is, whether the sureties of the tax collector, who, by judgments against them in favor of the State and county severally, (in suits to which the tax collector was not a party, because he had left the State), have been made answerable for his defaults, are

entitled to subrogation to this lien. Subrogation is a term borrowed from the civil law. In *Houston v. Br. Bank,* 25 Ala. 257, it is defined as "the substitution of a new for an old creditor;" or, in its more general sense, "the act of putting by transfer, a person in the place of another, or a thing in the place of another thing." By this transfer "the new creditor is subrogated to all the rights of the original creditor." The principle upon which the whole doctrine of subrogation, not only as it is applied for the protection of sureties, but as it is applied to compel him who is primarily liable, or the thing which may be primarily liable to bear a burthen, to continue to bear it for the relief of him, or another thing, secondarily liable, does not depend upon contract, but has its foundation in natural justice, and is said by Ch. Kent to be "recognized in every cultivated system of jurisprudence." No doctrine can be more firmly established, than that a surety who has paid the debt of the principal, is entitled to stand in the place of the creditor, as to all securities for the debt, held or acquired by the creditor, and to have the same benefit from them as the creditor might have had, if the surety had not paid, and the creditor had resorted to them.— *Cullom v. Emanuel,* 1 Ala. 23; *Foster v. Athenæum,* 3 Ala. 302; *Ohio Life Ins. Co. v. Ledyard,* 8 Ala. 866; *Houston v. Br. Bank,* 25 Ala. 250; *Fawcetts v. Kimmey,* 33 Ala. 261; *Troy v. Smith, ib.* 459; *Lyon v. Leavitt,* 3 Ala. 430; 1 Story's Eq. § 499, *et seq.;* 1 Lead. Eq. Cases, (4th Ed.) 136; 2 *ib.* 277; Brandt on Suretyship, §§ 260-282. As a necessary consequence of this right of the surety, it is well settled on authority, that if the creditor, without the consent of the surety, parts with or renders unavailable, any security or fund, which he has the right to apply in satisfaction of the debt, the surety is exonerated to the extent of the value of such securities. The reason is, that such securities or fund are impressed with a trust for the payment of the debt, and the creditor is bound to apply them, or hold them as a trustee, ready to be applied for the benefit of the surety.— *Cullom v. Emanuel,* 1 Ala. 29; *Cheeseborough v. Millard,* 1 Johns. Ch. 409; *Hayes v. Ward,* 4 Johns. Ch. 123; Brandt on Suretyship, §§ 370-372. The principle is sometimes expressed in another form: "that when a creditor has the means of satisfaction in his own hands, and chooses not to retain it, but suffers it to pass into the hands of the principal, the surety to that extent will be discharged."—*Perrine v. Firemen's Ins. Co.* 22 Ala. 576. "Means of satisfaction," in this case, this court said, "signifies property or money of the principal debtor in his lawful possession, which he may rightfully retain and appropriate to the satisfaction of his

[Knighton et als. v. Curry et als.]

debt, without violating any duty or subjecting himself to an action; in other words, there must be a lien in his favor on the property in his hands, conferred either by law or the owner, which is defined to be a right of retainer."

The last clause of the sentence quoted, is too narrow to be taken as a definition of the term, *means of satisfaction*. These words embrace every case of a lien or a trust, created by law, or by contract, which gives to the creditor the right to charge the property of the principal debtor with the payment of the debt, as well as cases in which he may have possession of the property or effects of the principal, and a right to retain possession until the debt is satisfied. The word *lien*, at common law, was originally of much narrower signification, than at the present day. Then, it was a mere right to retain possession until a debt was satisfied, and was lost if the possession was parted with voluntarily. Now, it is employed to designate all the various charges of debts upon land or personalty, whether created by contract, or by statute, or recognized in courts of equity, or by the maritime law." Thus, we have the lien of a judgment; the lien of an execution; the lien of a partner; the lien of a legal or equitable mortgage; the lien of a vendor," (the lien of a landlord for rent, or for advances to the tenant), "and various other charges which are denominated liens; and in courts of equity, the term *lien* is used to denote a charge or incumbrance on a thing, where there is neither *jus in re*, nor *jus ad rem*, nor possession of the thing."—*Donald v. Hewitt*, 33 Ala. 547. All these are intended, and are in fact and in the contemplation of law, but a security for the debt to which they may be attached. The *lien* of a vendor for the purchase-money of lands, does not spring from contract—it is excluded, if the parties contract for a specific lien, or if other security is taken. It is implied or raised by a court of equity, because it is deemed inequitable, that one man should get and keep the estate of another without paying the purchase-money. There are other *liens* raised by a court of equity, resting upon the same broad considerations of advancing right and justice between parties.

Whenever such liens exist, courts of equity have generally held the surety on paying the debt of the principal, was entitled to subrogation to them, and have held, as a consequence, that if the creditor parted with them, or voluntarily rendered them unavailing to the surety, without his consent, the surety was *pro tanto* discharged. We have several decisions which hold, that if an execution issuing on a judgment against principal and surety, is levied on property of the principal debtor sufficient to satisfy it, a release of the prop-

[Knighton et als. v. Curry et als.]

erty by the creditor, discharges the surety.—*State Bank v. Edwards*, 20 Ala. 512 ; *Winston v. Yeargin*, 50 Ala. 340 ; *Summerhill v. Tapp*, 52 Ala. 227. Following the case of *Mayhew v. Crickett*, 2 Swans. 185, the doctrine of the court is, that the creditor is a trustee of his execution for the benefit of the surety, and though not bound to active diligence, though he may, if he will, remain passive, yet, if he voluntarily interferes and by his own act releases the lien, the surety is discharged. Even after judgment against principal and surety jointly, the principle is settled, that the relation of principal and surety continues, and if the creditor enters into an agreement binding him, by which time is given the principal, without the consent of the surety, he is discharged.— *Comegys v. Booth*, 3 Stew. 14 ; *Carpenter v. Devon*, 6 Ala. 718. It does not lie within our province to enquire whether the case of *Caller v. Vivian*, 8 Ala. 903, is consistent with the decisions to which we have referred.

There is a conflict between the English Court of Chancery, and the current of decisions in this country, as to the extent of the right of the surety to subrogation to the rights and remedies of the principal. In England, it seems to have been limited to independent collateral securities for the payment of the debt, held by the creditor, and was not permitted to embrace "collateral incidents and dependent rights growing out of the original debt." Or, as it is expressed by Lord ELDON in *Capis v. Middleton*, 1 Turn. Russ. (11 Eng. Ch. 131), it was applicable only "to such securities as continue to exist, and do not get back upon payment to the person of the principal debtor." This qualification of the equity of the surety, is not consistent with the opinion of Ch. KENT in *Cheeseborough v. Millard, supra,* which he founds on earlier cases in the English Court of Chancery, "and to which," said C. J. GIBSON, "he would doubtless have added *Glossap v. Harrison*, chapter 61, had it been known in this country, but it was made only a few months before." The Court of Appeals in Virginia disapproved of this limitation or qualification of the equity of the surety after an elaborate examination of the authorities and of the reasons which underlie it.—*Powell v. White*, 11 Leigh. 309 ; and it has been repudiated in all the States, except this State, North Carolina, and perhaps Vermont. In England, it has been materially modified, if not entirely abrogated by act of Parliament.—1 Lead. Eq. Cases, 132 ; Brandt on Suretyship, § 274. In this State, it is narrowed and circumscribed by the statute, which compels the creditor to assign to a surety paying the debt, any judgment the creditor may have obtained upon it, and authorizes the surety to assert "in law or equity any

right or lien against the principal debtor, which the plaintiff could assert, if the debt had not been paid."—Code of 1876, § 3418.   This qualification of the equity of the surety, was never, perhaps, consistent with the spirit of our legislation, which favors sureties, and furnishes them peculiar remedies to compel the principal to the payment of the debt, and to compel the creditor to immediate suit, if danger of loss is apprehended from delay.   Nor is it consistent with the liberal application of the doctrine of subrogation in other cases, when a creditor has an election of funds or remedies, which he is not permitted to exercise so as to disappoint the rights or equities to which others may be entitled.

In *Lyon v. Bolling,* 9 Ala. 463, an indorser, who had paid a separate judgment against himself, was held entitled to subrogation to a judgment the creditor had obtained against the maker for whose accommodation he had indorsed the promissory note; and execution on that judgment having been returned "no property found," he could resort to equity to subject to its payment equitable assets, or property conveyed in fraud of creditors.   In *Sanders v. Watson,* 14 Ala. 198, it was held that a surety discharging a joint judgment against himself and the principal, could not resort to equity to subject real estate the principal had fraudulently aliened.   The court said :  "The judgment recovered by the United States, was joint, against all, and the payment extinguished it." The distinction between this case and that of *Lyon v. Bolling, supra,* is very narrow and technical.   It is not in the relation of the parties, for it has long been the settled law of this State, that as between the maker and the indorser, an accommodation indorser stands to the maker in the relation of a surety.—*Brahan v. Ragland,* 3 Stew. 247 ; *Meek v. Black,* 4 Stew. & Port. 374.   It is the technical effect of payment of the joint judgment, upon which the distinction rests.   That the judgment was joint in the latter case, resulted from the election of the creditor, who, under our statutes, had the option of suing the principal and surety jointly or severally.   The equity of the surety does not depend, nor can it be made to depend upon the mere option of the creditor in electing his remedies upon the debt.   The judgments in *Lyon v. Bolling,* operated the same merger of the promissory note, that the judgment in favor of the United States did of the bond of the principal and sureties in *Sanders v. Watson.—Brown v. Foster,* 4 Ala. 282 ; *Sawyer v. Bradford,* 6 Ala. 282.   As to the common creditor, the payment in each case had precisely the same operation, extinguishing each of the judgments so that he was without right to proceed upon them, or on the note or bond on which they

were respectively founded. The independent judgment in his favor, though *functus officio* as to him, was yet deemed a security to which the surety could be subrogated. It was treated as a collateral security that did not *get back* to the principal debtor by the payment made by the surety. "What is a very payment at law, may not be payment at all in equity."—*Croft v. Moore*, 9 Watts, 451. Whether it shall have in equity the same effect as at law, depends upon the party making it, the circumstances under which it was made, and who claims the benefit of it. I confess that I am at a loss to understand upon what principle of equity, a principal bound morally and legally to protect his surety, or the fraudulent donee of the principal, could invoke the benefit and protection of a payment made by the surety, to disappoint and defeat the surety seeking the intervention of a court of equity to indemnify himself. If there are any cases in which a court of equity will not permit mere legal defences to be set up, (and it must be admitted there are many), it is difficult for me to conceive of one in which mere justice would more sternly demand a liberal exercise of the power, than in that of a surety under the circumstances disclosed in *Sanders v. Watson*. The case, however, is superseded by the statute to which we have referred; and without extending this opinion by a review of our decisions which may be supposed to recognize the doctrine of *Capis v. Middleton, supra*, it is enough to say we are not inclined to extend their application.—*Foster v. Trustees of Athenæum*, 3 Ala. 302; *Sanders v. Watson, supra; Houston v. Br. Bank*, 25 Ala. 250. They do not compel us to its application to a case of the kind now presented, in which subrogation is claimed to a security growing out of contract, not dependent upon a judgment against the principal. In no such case has subrogation been denied the surety, nor can it be denied, so long as courts of equity maintain the doctrine, that a creditor cannot, by his own election of the fund from which he will obtain satisfaction, prejudice the rights of others, but that if necessary they shall be substituted to his rights, or he shall be compelled to seek satisfaction from the fund to which they cannot resort. The statute subjecting the property of a tax collector to a lien for any default he may commit, the lien attaching on the execution of his official bond, is of the same dignity it would be, if in express words it was written as a stipulation of the bond. If so written, the bond would only repeat and declare its legal effect and operation. And if so written, in the absence of the statute, it would operate as an equitable mortgage, and as such a court of equity would enforce it. No right of property, neither a *jus in re*

nor a *jus ad rem*, may be conferred, but on a sufficient consideration a charge on all the property of the collector is created, and the charge is a better or additional security for the satisfaction of his defaults. The statute creating it, third persons may have been induced by it to become his sureties, thereby subjecting, in the event of his default, their own property to a similar charge. To deny them the benefit of the *lien* upon a narrow construction that it is not intended so much as a security for the debt the default of the collector creates, as it is for the mere indemnity of the State and county, would add unnecessarily to the burthens of suretyship. The collector has no just cause of complaint that his property is made to bear the charge as well for the ease of his sureties, as for the indemnity of the State and county. Other creditors of his cannot reasonably complain that for their benefit the sureties are not compelled to relieve his property of the burthen. Purchasers from him are charged by law with notice of the *lien*, and can acquire no right or interest which is not subordinate to it.

A surety is not entitled to subrogation until payment of the debt for which he is liable.—Brandt on Suretyship, § 261; 2 Lead. Eq. Cases, 278. But whatever discharges the principal from liability to the common creditor, and is by him accepted as a payment, will operate in favor of the surety as a payment. It is not essential that the surety should have paid money; whatever the creditor accepts as an equivalent and in satisfaction will operate as a payment. The acceptance by the Commissioners' Court of the promissory notes of the sureties in satisfaction of the demand against the principal and sureties, was as effectual as a payment as if money had been employed.

We find no error in the decree of the Chancellor, and it is affirmed.