# Watts *v.* Eufaula National Bank.

*Bill in Equity by Creditors, to enforce Mortgage as General Assignment.*

1. *Waiver of answer on oath.*—When an answer on oath is waived by the complainant (Code, § 3762), the answer is regarded as mere pleading, and is entitled to no more weight as evidence than the bill.

2. *Mortgage declared general assignment, at instance of creditors.*—A mortgage executed by an insolvent debtor, for the protection and indemnity of his sureties on official bonds, will be declared and enforced as a general assignment (Code, § 2126), at the instance of his other creditors, when it conveys all of his property; but, as to property conveyed by it belonging to his wife, who joined with him in its execution, such creditors have no right to relief.

3. *Subrogation of surety to rights and remedies of creditor.*—The doctrine is firmly established in equity jurisprudence, and is founded on substantial and fundamental principles of right and justice, that a surety, paying the debt of his principal, is entitled to be subrogated to all the securities, rights and remedies, which the creditor himself had and might have enforced for the payment of the debt; and since the statutory enlargement of the principle (Code, § 3418), this court has been liberal in its application of the doctrine in favor of the surety.

4. *Official bond of probate judge; operating as lien on his property; not retroactive.*—By express statutory provision (Code, § 167), the official bond of a judge of probate, and of other officers named, is declared a lien on his property from the date of its execution; and effect is to be given to this lien as if it were expressly declared as a stipulation in the bond itself, though it can only be enforced in a court of equity; but the statute is not retroactive in terms, nor could it have been made applicable to bonds executed before its passage.

5. *Same; what sureties, asking to be subrogated, must show.*—Sureties on the official bond of a judge of probate, having paid the defalcation of their principal, and seeking to be subrogated to the statutory rights and lien of the State and other creditors whose debts they have paid, must allege and prove the particular facts which show their right of subrogation, and the extent of it; and where two official bonds were executed, one before and one after the enactment of the statute declaring the lien, and the sureties on both bonds unite in claiming subrogation, not discriminating between the defaults committed before and those committed after the enactment of the statute, nor stating the facts from which their respective liabilities and rights can be ascertained, their claim to relief is not established.

6. *Surety's right of subrogation; depends on what.*—To perfect the surety's right of subrogation, it is not necessary that, at the time of paying the debt, he should do some act signifying his election and acceptance

[Watts v. Eufaula National Bank.]

of the right. The fact of suretyship, payment of the debt by the surety, and a lien or security held by the creditor for the payment of the debt, without more, generally create the right; and it continues until lost by *laches*, or until the surety does some act which amounts to a waiver.

7. *Same; waiver of.*—The right of subrogation, being an equity which springs from the relation between the parties, may be asserted or waived by the surety, for whose benefit it is raised; and it is waived by any positive act on his part, at the time of making the payment, or subsequent thereto, which is inconsistent with the right of subrogation,—as by his acceptance of an independent security, which is not cumulative merely.

8. *Same.*—A defaulting public officer having executed a mortgage for the indemnity and protection of his sureties on two official bonds, conveying to them all of his own property, and also property belonging to his wife, who joined with him in its execution; the acceptance of such mortgage by the sureties on the second bond, which alone operated a lien on his property (Code, § 167), is a waiver of their right to be subrogated to this lien, as against other creditors seeking to have the mortgage declared a general assignment.

9. *Election between inconsistent rights.*—A creditor or surety, who is provided for by a mortgage or assignment executed by his debtor, can not assert rights both under and against the conveyance, but must elect which he will accept; and his acceptance of the conveyance operates as a waiver of any independent rights inconsistent with its provisions.

10. *Cross-bill; when necessary.*—When a creditor files a bill, asserting a distinct, independent and superior lien or right on property on which another creditor also has a lien, a surety, having paid the debt of the latter, may set up his right of subrogation by answer, it being merely defensive; but, where the bill is filed by general creditors, asking to have a mortgage declared a general assignment, and the mortgagees seek affirmative relief in marshaling the assets, a cross-bill is necessary.

APPEAL from the Chancery Court of Barbour,
Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 19th December, 1882, by Thomas H. Watts and others, as creditors of Wiley E. Jones, on behalf of themselves and all other creditors who might make themselves parties and contribute to the expenses of the suit, against the said Wiley E. Jones, the Eufaula National Bank, S. H. Dent and others; and sought to have a mortgage which the said Jones had executed to said Dent and others, declared a general assignment, enuring to the benefit of all his creditors equally. The mortgage, a copy of which was made an exhibit to the bill, purported to convey all the property belonging to said Jones, and also certain property belonging to his wife, who joined with him in its execution ; and to be given for the protection and indemnity of the mortgagees, as sureties on the official bonds of said Jones as probate judge of Barbour county, on account of his defalcations in his official capacity ; "provided the said sureties should borrow and secure the amount of $13,624.95, by the execution of promissory notes hereinafter described, said moneys to be used in the payment and satisfaction of the sum ascertained to be due to the State of Alabama, and for the other moneys for which said Jones is liable as such judge of probate." The notes, as described, were

three in number, maturing on the first days of November and December, 1882, and the first day of January, 1883; and it was recited that some of the sureties had already signed them, and borrowed the money on them; while it was provided that the mortgage "is and shall be for the mutual benefit of all the sureties of said Jones on his said official bonds, who have already signed, or may hereafter sign and become liable on said notes." After the defendants had answered, claiming a right of subrogation to the lien declared by statute (Code, § 167), to the amount of the defalcations of said Jones which they had paid, the bill was amended by striking out the names of all the complainants except Thomas H. Watts; and his deposition was taken, proving his debt. The cause was submitted, on the part of the complainant, "on the bill, exhibits, answers, and deposition of Thomas H. Watts;" and on the part of the defendants, "on the bill, exhibits, and answers." The chancellor sustained the defendants' claim to the right of subrogation, and dismissed the bill; and his decree is now assigned as error.

WATTS & SON, and J. M. White, for appellant.

McKLEROY & COMER, *contra.*

CLOPTON, J.—Wiley Jones was, in 1874, elected judge of probate of Barbour county, and re-elected in 1880. While discharging the duties of his office under these elections, he was found to be a defaulter to a large amount, for moneys collected by him on account of licenses issued under the revenue law, and also in arrears to different persons for moneys received in his official capacity. The State having commenced suit against him and his sureties on his official bonds, an arrangement was made, about May 30th, 1882, between Jones and some of his sureties, by which the sureties borrowed and obtained money on three several notes made by them, for the aggregate sum of $13,624.95, for the purpose of paying the defalcations of Jones; and Jones and his wife executed to them, for their security and indemnity, a mortgage on their property, real and personal.

The bill was brought originally by several creditors of Jones, to have the mortgage declared, under the statute, a general assignment, and to have decreed fraudulent the conveyances to Mrs. Jones of the property claimed and mortgaged by her. Answers under oath were waived. During the progress of the case, the bill was amended by striking out all the complainants as parties, except the appellant. No evidence was taken, other than the deposition of appellant, to establish his demand against Jones; and the submission in all other respects was,

practically, on bill and answer. In such cases, the answer, oath thereto being waived, is entitled to no more weight as evidence than the bill; and as to matters in respect to which no evidence is offered, it is regarded as mere pleading.—Code, § 3762; *Zelnicker v. Brigham,* 74 Ala. 598.

The case may be cleared of any complication arising from the conveyances to Mrs Jones. The allegations of the bill touching their fraudulent character are denied by the answer, and they are unproved. Had it been shown that they were voluntary, as alleged, and that the claim of appellant was existing at the time they were made, the mortgagees would be protected, as innocent purchasers for value, unless it were further shown that they had notice of their taint. The recited consideration of the conveyance does not appear, and we may dismiss this aspect and purpose of the bill from further consideration. This leaves, as the material question to be considered, whether the sureties on the official bonds of Jones, being the mortgagees, can successfully interpose, by *answer*, the right of subrogation, as a defense to the title of complainant to have the mortgage declared a general assignment?

The debt of the complainant having been proved; the bill alleging the execution of the mortgage, and making a copy an exhibit; the answer admitting its execution, and the correctness of the exhibit; and the mortgage stating, on its face, that the intent and purpose are to embrace all the estate of Jones in any property which he may have, own, or possess in his own right; it is manifest that complainant is entitled to have the mortgage declared a general assignment, under section 2126 of Code, as to the individual property of Jones, unless his right is avoided and defeated by the sureties' right of subrogation, as set up in this case.—*Danner v. Brewer,* 69 Ala. 191. It is equally clear that, Mrs. Jones not being a debtor to complainant, he has no title to have any lien declared in his favor, on the property belonging to her, and conveyed by the mortgage.

No doctrine of equity jurisprudence is more firmly established, or founded on more substantial and fundamental principles of right and justice, than the rule which subrogates a surety, who has paid the debt of his principal, to all the rights, remedies, and securities held or acquired by the creditor against the person or property of the principal debtor, with the same rights to resort to them that the creditor would have had, if the surety had not paid the debt. The rule rests on the superior equity of the surety to be reimbursed out of any fund to which the creditor could have resorted, in the first instance, for his relief, and upon the natural equity, that the person primarily bound shall pay the debt. Until altered by statute, this

court followed the rule established by Lord Eldon in *Copis v. Middleton* (1 T. & R. 229), which restricted the right of subrogation to the independent collateral securities held by the creditor for the payment of the debt, holding that the debt itself was extinguished. Whether the rule, thus followed, was logical or just, it is unnecessary now to discuss. Since its statutory alteration, this court has been liberal in the amplified and beneficial application of the right to subrogation, when there are no intervening and conflicting rights of third persons, of superior or equal equity. When the sureties on the official bonds of the judge of probate paid his defalcations, they had a right to be substituted in the stead of the State, and the persons to whom he was in arrears, and entitled to enforce, for their protection and repayment, all the liens and remedies held by the State and such persons to secure the performance of his official bonds.—*Knighton v. Curry*, 62 Ala. 404.

Until the passage of the act of March 17, 1875 (Acts 1874–75, p. 50), the bond of the judge of probate was not a lien on his property. In *Knighton v. Curry, supra*, it is said : "The statute subjecting the property of a tax-collector to a lien, attaching on the execution of his official bond, is of the same dignity it would be if in express words it was written as a stipulation of the bond. If so written, the bond would repeat and declare its legal effect and operation. And if so written in the absence of the statute, it would operate as an equitable mortgage, and as such a court of equity would enforce it." The lien, attached to the bond of the judge of probate, is a lien by contract, and operates as a mortgage would to a mortgagee, with the exception that it can be carried into effect, as a specific lien, only in a court of equity.—*Dallas County v. Timberlake*, 54 Ala. 403. The act, making the bond of the judge of probate a lien, does not purport to be retroactive ; and if such effect had been attempted by the legislature, it would have been inoperative, there being no legislative authority to incorporate a term or condition in a contract made and completed. It follows, that neither the State nor any person had a lien for any defaults of Jones committed under any official bond executed by him prior to March 17, 1875 ; and there was no lien, security, or priority, to which the sureties can be subrogated on the payment of such defaults, unless it were shown that the moneys received by him, while acting under the former bond, were unconverted at the time of the execution of a bond after the passage of the act ; and then the right of subrogation would extend only to the sureties on such subsequent bond, and on payment by them.

Before a court of equity can decree subrogation, the facts on which it arises must be distinctly and appropriately alleged and

[Watts v. Eufaula National Bank.]

shown. Subrogation is a creature of equity, born of the relation between surety and principal, and is not a matter of contract. Neither by the bill, nor by the answer, is the court informed how many bonds were executed, when they were severally executed, who were the sureties on the respective bonds, under what bond or bonds the defaults were committed, or the amount of default under each bond. Sufficient facts are not furnished to enable the court to ascertain what sureties are entitled to subrogation, and the extent of the right.

We can not assent to the proposition, insisted on by appellant, that the surety must do some act, at the time of payment, signifying his election and acceptance of the right of subrogation. Suretyship, payment of the debt by the surety, and a lien held by the creditor for the payment of the debt, generally, *ipso facto*, create the right, which continues until lost by *laches*, or until the surety does something that amounts to a waiver. Whether it is an equity, which the surety may waive or assert at his option, or a lien attaching at the time of payment, without respect to intention, is said to be a controverted question. It has been held, that the expiration of six years from the time of payment is a sufficient answer to a claim of subrogation, that being the time required to bar an action for money paid for and at the instance of another.—*Fink v. Mahaffy*, 8 Watts, 384. On reason, however, it seems that the surety should be allowed the same time, in which to enforce the lien or security, that the law would have allowed to the creditor, to whose rights and remedies he succeeds.

Subrogation, being an equity springing from the relation between the parties, and created and enforced for the benefit and protection of the one in whose favor it is originated, may be asserted or waived at pleasure. It may be that it is a question of intention, with the presumption that the surety intends to keep the debt alive, and claim the right of subrogation; but, if it clearly appears that the intention was to satisfy and extinguish the debt or demand, not only as to the creditor, but as between the surety and the principal debtor, the right of subrogation is waived.—*Houston v. Br. Bank at Huntsville*, 25 Ala. 250; *Croft v. Moore*, 9 Watts, 451. Any positive act done by the surety, at the time of or subsequent to payment, inconsistent with the enforcement of the right, will be considered as a waiver. Accepting an independent security, which is not cumulative merely, and the enforcement of which is not consistent, and can not be concurrent with the enforcement of the right of subrogation, displaces and defeats the latter right. In *Cooper v. Jenkins*, 32 Beav. 337, where two persons, one being tenant for life of two lots of land, and the other entitled in remainder, mortgaged one of them to a third person for the

[Watts v. Eufaula National Bank.]

debt of the remainder-man, who alone covenanted to pay, and the tenant for life took from the remainder-man a contemporaneous deed to the other lot to indemnify him as surety, it was said : "If a surety pay off the mortgage, he is entitled to the benefit of all the securities. But here, the plaintiff has contracted with the mortgagor, for whom he is surety, that he should receive a particular species of indemnity, if he pays off any part of the principal or interest of the mortgage. That indemnity he is entitled to, but not to the benefit of the mortgage paid off."

The mortgage executed by Jones and his wife to his sureties, recites, substantially, that Jones and his wife, being desirous of securing his sureties, and saving them harmless, have agreed to execute the mortgage for that purpose, provided the sureties should borrow the amount $13,624.05 by the execution of promissory notes ; the amount thus borrowed to be used in the payment and *satisfaction* of the sum ascertained to be due to the State, and of the other moneys for which Jones was liable as judge of probate; that three several notes, for variant amounts, and payable on the first days of November and December, 1882, and first day of January, 1883, respectively, were made by the sureties, or some of them ; that a portion of the sureties, at the instance and request of Jones, had borrowed the required amount; that the mortgage is and shall be for the mutual benefit of all the sureties on his official bonds, who had signed or might thereafter sign the notes; and the law-day of the mortgage is postponed until the notes respectively mature. The mortgage embraces not only all the property of Jones on which the State had a lien, but also the property of Mrs. Jones, as to which there was never any right to subrogation.

It may be conceded, that if the creditor holds a mortgage, and the surety, on paying the debt, takes a new mortgage on the same property in renewal thereof, the right of subrogation is not thereby waived ; the renewal of a former mortgage, without satisfaction of the debt, not operating to impair the security ; or, if the surety takes a new mortgage on the same and additional property, and the new mortgage is invalid, he will be restored to his right of subrogation.—*Peterson v. Birdsall*, 64 N. Y. 294 ; *Worcester Nat. Bk. v. Cheeney*, 87 Ill. 602. It is well settled, that no person will be permitted to claim both under and against the same instrument. He must select and proceed under the one or the other of the two rights which he claims. The sureties of Jones had two distinct rights, on paying his defaults ; the right of subrogation, or the right to consider and treat the original debt as extinguished, and to require and take other and independent security as for a new debt, supported by an implied promise. Instead, so far as appears,

of standing on their right of subrogation, the sureties stipulated for and obtained other and independent security, based on their agreement to borrow the money, and to use it in *payment* and *satisfaction* of the demand of the State, and of the other claims against Jones as judge of probate. Assuming, as we are authorized in the absence of counter allegations and proof, that Jones executed a bond within the period required by law after his election in 1874, which had no lien, and that he also gave another bond after his re-election in 1880, which had a lien, the sureties on the latter bond waived their right of subrogation, in favor of the sureties on the first bond, by obtaining and accepting the mortgage, which expresses that it is for the mutual benefit of the sureties on all his official bonds. The rights under the mortgage, and the right of subrogation, cannot co-exist, and the remedies are not concurrent. Procuring and electing to claim under the mortgage, is *prima facie* a waiver of the right of subrogation.

In *Hatchett v. Blanton*, 72 Ala. 423, where the rule as to inconsistent rights was applied in the case of an assignment by a partner of partnership and individual property to pay individual debts, and a partnership creditor, who was provided for in the assignment, asserted a superior right to be paid out of the partnership property, it is said : "It can not be doubted that, when a debtor voluntarily assigns property for the security and benefit of creditors, if the creditors choose to accept the assignment, they must abide by its terms and provisions ; they must take it as an entirety ; they can not accept in part, and repudiate in part. . . The creditor may have rights with which the assignment, so far as it confers rights upon others, is inconsistent. The assignment may derogate from, instead of extending to him the measure of right to which he is entitled. If that be true, he must elect whether he will accept the assignment, or whether he will reject it, and stand upon the rights he may have independent of it. He can not elect to claim under the assignment the rights given by it, and repudiate it so far as it passes rights to others which are inconsistent with independent, distinct rights to which he may be entitled." *A fortiori*, when the sureties negotiated for and obtained the mortgage, and elect to claim under it, they must take it with all the burdens arising from its legal effect and operation. Under the unbending rule of the statute, as it was when the mortgage was executed (Code, 1876, § 2126), which provides, that every general assignment, by which a preference is given to one or more creditors, over the remaining creditors of the grantor, shall enure to the benefit of all the creditors equally, we are constrained to hold, that on the bill, answer, and proof of the debt of complainant as existing at the date of the mortgage,

[Ex parte The State, in re Tate.]

the complainant is entitled to have the mortgage declared a general assignment, as respects the individual property of Jones, however strong may be the desire and disposition of the court to protect the sureties, when consistent with the rights of third persons.

When a creditor brings his bill, asserting a superior lien or right, distinct and independent, on the same property on which another creditor has a lien, a surety, who has paid the debt of the latter creditor, may set up his right of subrogation by answer, it being merely defensive. But, when the surety, as in this case, is compelled to assert his right affirmatively, and ask for affirmative relief in marshalling the assets, a cross-bill is necessary.

We refrain from rendering a decree in the present condition of the case, as, possibly, the attendant facts and circumstances may be such as to show no intention to extinguish the original claims, or to waive any right of subrogation, and that the mortgage was intended as cumulative security; though we are unable at this time to conceive such state of facts. The case will be remanded, that the sureties may pursue such course as they may be advised.

Reversed and remanded.