# Baker *v.* Schuessler.

*Bill in Equity by Surety on Tax-Collector's Bond, to enforce Statutory Lien on Property of Deceased Principal.*

1.  *Official bond of tax-collector; lien on after-acquired property.*—The lien of a tax-collector's bond, as declared by statute (Code, 1876, § 403; 1886, § 527), extends to property acquired by him after its execution, and continues notwithstanding a sale of the property before the rendition of judgment against him for a default.

APPEAL from the Chancery Court of Chilton.

Heard before the Hon. S. K. MCSPADDEN.

The bill in this case was filed on the 1st January, 1883, by Moses Simmons, against James A. Dudley, late tax-collector of said county, the sureties on his official bond, and several persons who had bought property from him; and sought to subject the property of said Dudley, and the property of the sureties so far as necessary, to the payment of a judgment which the county had recovered against them for an official default on his part, and which the complainant, one of the sureties on the bond, had paid, taking an assignment of it to himself. The bond was dated October 11th, 1875, and was conditioned in the words of the statute. The judgment was for $1,327.04, and was rendered on the 22d October, 1878. On the death of the complainant pending the suit, the cause was revived in the name of Adam Schuessler as his administrator.

The property sought to be condemned by the bill con-

[Baker v. Schuessler.]

sisted of several distinct parcels of land in the town of Clanton.  One of these parcels, containing several town lots, was the homestead of said Dudley at the time his bond was executed, and of value less than $2,000; and it was sold and conveyed by him, by deed dated 15th January, 1876, on the recited consideration of $1,000 in hand paid, to Mrs. M. F. Callen.  Another parcel, containing two town lots, was bought by him on the 2d February, 1876, and was occupied by him as a homestead until the 23d June, 1877, when he sold and conveyed it to Mrs. Mary A. Baker.  The conveyance to Mrs. Callen also embraced several lots which said Dudley had bought after the execution of his bond.  On final hearing, on pleadings and proof, the chancellor rendered a decree subjecting each of these parcels to sale, in satisfaction of the amount ascertained to be due to the complainant. The appeal is sued out by Mrs. Baker, and she assigns the decree as error.

WATTS & SON, and W. A. COLLIER, for appellant.—The statute does not, in terms, declare that the lien of a tax-collector's bond extends to property acquired by him after its execution; and reasoning from analogy, such effect can not properly be given to it.  This court has said, that the bond creates a contract lien, as if the words of the statute were incorporated in the bond.—*Dallas County v. Timberlake*, 54 Ala. 403; *Knighton v. Curry*, 62 Ala. 404.  If the words of the statute were incorporated in the bond, it would create a mortgage, without a power of sale—that is, an equitable mortgage.  At common law, a mortgage could not cover property which the mortgagor did not own at the time it was executed, for, it is said, "a man can not grant or charge that which he hath not."—*Burns v. Campbell*, 71 Ala. 271; *Mather v. Purcell*, 35 Ala. 570; Jones on Mortgages, §§ 152-56.  A mortgage may operate on property afterwards to be acquired, if the intention that it shall so operate is clearly expressed; but it creates no specific lien on such property,—*Montgomery v. Chase*, 30 Minn. 132; *People v. Bristol*, 35 Mich. 38; *Curtis v. Wilcox*, 49 Mich. 425.  The *dictum in Lott v. Mobile County*, 79 Ala. 69, is not supported by authority.

W. S. THORINGTON, *contra*, cited *Boring v. Williams*, 17 Ala. 516; *Lott v. Mobile County*, 79 Ala. 69; *Knighton*

[Baker v. Schuessler.]

*v. Curry*, 62 Ala. 404; *Dallas County v. Timberlake*, 54 Ala. 403; *Schuessler v. Dudley*, 80 Ala. 547.

CLOPTON, J.—The decisive question in this case is, whether the lien declared by the statute, for the amount of any judgment which may be rendered against the tax-collector in his official capacity, for the State or county taxes, attaches to property acquired by the collector after the execution of the bond, and sold by him before the rendition of judgment. The statute declares: "The bond of the tax-collector shall operate, from its execution, as a lien in favor of the State and county, on the property of such collector, for the amount of any judgment which may be rendered against him in his official capacity, for the State or county taxes; and on the property of his sureties, from the date of his default." This section of the Code was considered and construed in *Lott v. Mobile County*, 79 Ala. 69, where it is said: "It is our opinion, that the lien of the tax-collector's bond, created by section 403 of the Code of 1876, is intended to operate upon property of the collector acquired by him subsequently to the execution of the bond, as well as on such as he may own at the time of its execution. So with property acquired by the sureties at any time between the collector's default and the time when suit is commenced for the enforcement of the statutory lien. Any other construction would operate to defeat the purpose of the statute, and cripple its practical enforcement." The conclusion of the chancellor was, no doubt, rested on this declared interpretation, which ordinarily would be regarded sufficiently authoritative. But it is now insisted, that the construction of the statute in this respect was unnecessary to a decision of the case; and that, as no reasons are given, nor authorities cited, it is not only not binding on the court, but should not be allowed persuasive influence. A reconsideration is earnestly urged, and it is contended that such construction of the statute contravenes the rules which prevail in the analogous case of a mortgage.

The argument is, that by former decisions of this court, the bond of the collector is declared to be in the nature of a mortgage; that, in the case of a mortgage, the intention that it shall take effect upon property to be afterwards acquired must be expressed in the instrument; and if the words of the statute were employed in a mortgage, it would not cover after-acquired property. It is insisted that the

[Baker v. Schuessler.]

same rule of construction should be applied to the statute. Counsel invoke the rules of construction applicable to a mortgage containing words of grant or transfer, and intended to convey a present right of property—a legal mortgage; and in this, they mistake the purport and extent of the decisions. The cases cited and relied on (*Dallas Co. v. Timberlake*, 54 Ala. 403, and *Knighton v. Curry*, 62 Ala. 404) hold, that the lien declared by the statute is created by contract—the execution of the bond—having the same dignity and efficacy of security as that of a mortgage, and having the same legal effect and operation as if written in express terms as a stipulation of the bond; in which case, it would operate, in the absence of the statute, as an equitable mortgage, and be enforced as such. No right of property is conferred; only a charge is created which can be enforced only in a court of equity. The rules which govern in construing the effect and operation of words of grant or transfer, when used in a mortgage, are inapplicable. The inquiry, in determining whether the lien created by an equitable· mortgage, extends to property subsequently acquired, resolves itself into a question of intention, to be collected from the terms employed, the situation of the parties, the objects to be accomplished, and all attendant circumstances. If so intended, it takes effect and attaches to the property as soon as acquired. The doctrine is stated by Story, J. as follows: "It seems to me a clear result of all the authorities, that whenever the parties, by their contract, intended to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or not, or, if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice."—*Mitchell v. Winslow*, 2 Story, 630. There is, however, this difference between an equitable mortgage proper, and a statutory lien: the inquiry should be directed, in the case of the former, to the concurring intention of the parties; and in case of the latter, *solely* to the *legislative* intent, such intent being conclusively presumed to be the intent of the contractor.

In ascertaining the legislative intent, the consideration should not be confined to the terms employed, unless clear and unambiguous; but it should also extend to the subject-matter of the enactment, the policy on which it rests, and

[Baker v. Schuessler.]

the ends to be accomplished. The statute under considera-
tion relates to a subject of the greatest necessity and highest
importance in the administration of government—the collec-
tion of the public revenues. Its primary purpose is to pro-
mote and secure the collection of taxes. Such interpreta-
tion should be given to the statute, as will advance and promote
its manifest purposes, rather than that which would operate
to impair the security in favor of the State, and defeat the
objects intended. It will not be controverted, that a lien
extending and attaching to subsequently acquired property
would more effectually protect the State and accomplish the
purpose of the legislation. Therefore, such interpretation
should be placed on the statute, if it can be reasonably done
without doing violence to its language.

It is true, no words are employed, which expressly declare
that the lien shall attach to after acquired property; neither
does the language of the statute, expressly, or by implica-
tion, restrict the lien to property owned at the time of the
execution of the bond. The phraseology—"on the property
of such tax-collector"—is broad and comprehensive enough to
embrace all property of the collector, whether or not owned
by him at the time the lien first originates. The statute
fixes the time from which the bond shall operate as a lien,
a different date being fixed as to the property of the collector
and of the sureties. This difference in dates shows that this
provision of the statute was not intended to refer to the
time of ownership of the property, but simply to establish
the date from which the bond shall operate as a lien as to
the collector and his sureties respectively. The language is,
"The bond of the tax-collector shall operate, from its execu-
tion, as a lien in favor of the State and county, on the prop-
erty of such tax-collector, for the amount of any judgment
which may be rendered against him in his official capacity,
for the State or county taxes." This language clearly implies
continuity of the lien, and an intention to create a charge
continuous in its nature and operative, every moment of
time, on the property of the collector from its creation, by
the execution of the bond, until judgment is rendered ascer-
taining the amount thereof. Construing these terms of the
statute in connection with the comprehensive and unrestricted
designation of the property on which the bond shall operate
as a lien, and with the vital and important ends to be
accomplished, it seems manifest that the lien was intended
to operate on the property of the collector, whether owned at

35

[Montgomery & Florida Railway Co. v. McKenzie.]

the time of the execution of the bond, or subsequently acquired, and that in equity it attaches as a charge on the property as soon as acquired.

Affirmed.

