# Cummings v. May.

*Bill in Equity between Sureties, for Contribution.*

1. *Contribution between sureties on defaulting tax collector's bond; subrogation of sureties to rights of county; priority of county's lien.*—Under the provisions of the statute (Code, § 527), the bond of a tax collector is a lien upon the property of his sureties from the date of his default; and where certain of the sureties on the bond of a tax collector pay a judgment recovered against all the sureties by the county for the default of their principal, they are entitled to contribution from their non-contributing co-sureties, and, as against them, are subrogated to all the rights of the county in the judgment and to the lien given by the statute, and for their aliquot portion of the amount paid on the judgment acquire a lien against the non-contributing co-sureties, which dates from the time of the default, and is superior to any mortgage or other lien that may have been given by such non-contributing sureties subsequent to the default, even though such mortgage or lien was acquired prior to the rendition of the judgment.

APPEAL from the Chancery Court of Hale.

Heard before the Hon. WILLIAM H. TAYLOE.

The facts of the case are sufficiently stated in the opinion.

[Cummings v. May.]

JOSEPH H. NATHAN, for appellant.—The decree last rendered by the chancellor improperly fixes the lien of the complainants, and they are thereby deprived of much of the security to which they were entitled by law. *Howell v. Reams*, 73 N. C. 391; *Watts v. Eufaula Nat. Bank*, 76 Ala. 474; *Dallas County v. Timberlake*, 54 Ala. 412; 1 Brandt on Suretyship & Guarranty; §§ 269, 274.

TUTWILER & JONES and JAMES E. WEBB, *contra*—It is nowhere shown that the payment of November 1, 1882 was made with money collected by Britton of taxes for the year 1882. The court can not presume or officially know that it was tax money, and the same with reference to the sum of $1,000 paid December 2, 1882, and there stands no impediment in the way for the operation of the doctrine of payment. The rule is, payments when made generally and not applied by either payor or payee are applied to the oldest items of the account.—2 Greenl. on Evidence, § 533; *Harrison v. Johnston*, 27 Ala. 445; *Lee v. Tannenbaum*, 62 Ala. 508. There was no error in the decree of December 4, 1893, ascertaining and declaring that the evidence in behalf of complainants fails to show that the default of Britton, which appellants have paid on the State's taxes, or his default on county taxes was prior to the execution of the mortgages, which are exhibits to the bill. On the contrary, it shows affirmatively that any default which Britton may have committed prior to the date of these mortgages, was paid by Britton himself.

HARALSON, J.—The original bill was filed in this case in the Hale county chancery court, on the 17th March, 1884, by Cummings, Kinnard and others, who were sureties on the official bond of W. G. Britton, tax collector of said county of Hale, against T. T. May, who was a co-surety with them on said bond; and alleges that on the 25th of October, 1883, a judgment was rendered, in the circuit court of Hale county, against the said Britton and themselves, in favor of the State of Alabama, for the sum of $4,224.31 and costs, and that, on the 11th October, 1883, a judgment was rendered in said circuit court against them and the said Britton, in favor of the county of Hale, for the sum of $11,223.82; both judgments being for taxes collected by said Britton

for the State and county, which he had failed to pay over to them, respectively ; that they had paid said judgment in full to the State, and had paid by way of compromise of said judgment in favor of the county, the sum of $3,750 ; that May had mortgaged his property to Madison Jones and several other persons, who with May were made parties defendant.

The bill prays for contribution from May as a co-surety of complainants for his *pro rata* share of the money paid by them on account of said judgments ; that an account be taken showing what they as sureties on said bond to the State and county had paid ; to ascertain the aliquot part which the said May ought to have contributed towards the payment of said judgments and costs &c., and that the lien of the State and county growing out of said bond of said Britton, as tax collector, may be declared and decreed to be a first and superior lien over each and all of said mortgages made by said May to said Jones and others ; and that said May be required to pay the amount found to be due and owing to complainants in the premises.

The bill was afterwards amended, in conformity to a decree of the chancery court, striking out all the complainants except appellants, Cummings and Kinnard, and making them parties defendant

On April 1, 1889, a decree was rendered on submission of the cause, by special chancellor Benners, holding that, under the facts of the case as disclosed, the complainants were not entitled to contribution from May, on account of moneys paid on the judgment in favor of the county, because, by the terms of the compromise, they had disabled themselves to proceed against Britton, their principal ; that they were entitled to contribution on account of money paid in satisfaction of the judgment in favor of the State, after certain deductions proper to be made ; that complainants were entitled to subrogation to enforce the statutory lien on May's property, but that said lien was subordinate and inferior to that of the two mortgages to Madison Jones and the one to R. Moore & Co., executed prior to January 1, 1883, and in preference to the mortgages executed on and after 1st January, 1883. The decree did not specify the date at which the statutory lien accrued on account of the collector's default.

From this decreee an appeal was taken to this court by the complainants to the November Term, 1890 (Cummings v. May, 91 Ala. 233). We reversed the decree of the chancery court, holding that May was liable to complainants for one-seventh of the sum paid by complainants and the other sureties in compromise and settlement of the county's claim against them, to-wit, $3,750. The proofs as then developed tended to show that they paid this sum to the county.

After the reversal and the return of the cause to the chancery court, the solicitors for the respective parties in vacation entered into the following agreement, which was signed by them, respectively: "It is agreed that this cause be submitted to the chancellor upon the note of testimony as heretofore noted by the register of this court, for decree in vacation, within sixty days from this date. Dated September 24th, 1891." On this submission, the cancellor rendered a decree, which is dated the 20th of November, 1891, but which appears by the certificate of the register to have been "filed in office, 28th November, 1891."

On the 4th March, 1892, in vacation, the defendant, Madison Jones, filed in said court his petition for a rehearing in said cause, on grounds therein set out. On the 24th March, during term time, the solicitors of the respective parties entered into an agreement in writing, which appears in the transcript, to submit the cause for decree in vacation on that application, but no decree seems to have been rendered on this submission; and at the Fall Term. 1892, the cause was re-submitted for decree in vacation on said petition. On the 10th January, 1893, the chancellor rendered his decree, holding that the petitioner, under rule 80 of chancery practice, was entitled to file his petition, and on consideration reversed and annulled the former decree, and ordered a reference to the register to ascertain the amounts that had been paid by the sureties, to the State of Alabama and the county of Hale on their respective judgments. The petition of Jones had set up, that instead of having paid the sum of $3,750 on the judgment of the county of Hale, as complainants claimed they had paid thereon, and which had been made the basis of the calculation of the amount that said May, their co-surety on the tax-collector's bond, should pay to them on contribution,

that they had paid only the sum of $1,300, and had been released from the balance of the judgment, by the commissioner's court of the county, by authority of an act of the legislature passed at the session of 1888–89. The decree sought to be set aside on re-hearing, had been rendered by the chancellor, without a reference to the register, making for himself his own calculations. The chancellor in assigning his reasons for granting the rehearing, stated: "While the application is, perhaps, technically deficient and is carelessly drawn, yet, with its exhibits it shows a payment and a release that have nowhere else entered into the evidence in this cause. They were not necessary to the decision of any point that was necessarily upon the court on such a submission. Had the court pursued the ordinary course and ordered a reference, such testimony would have been more appropriate to the reference than to the submission. The petitioner has a right to relief by rehearing from so gross a wrong, especially when the court contributed to his surprise and injury and he acted promptly to redress the wrong. The granting or refusing the application rests in the sound discretion of the chancellor.—*Ex parte Gresham*, 82 Ala. 362. And under such rule, I feel bound to grant the rehearing in order that the basis of contribution by the defendant, May, can be properly ascertained."

The petition had been filed in time under rule 80; the complainants had gained an unconscionable advantage under the former decree, which might have been obviated, if a reference had been ordered, when the facts to show it might have been presented, and the granting of said petition and setting aside the former decree were fully justified in the reasons assigned by the learned chancellor, and fully sustained by the authority of this court, which he cites.

The reference was executed under this last decree, and ascertained the amounts that had been paid by the sureties on the State and county judgments, respectively. There were exceptions filed to the report by both sides, and at the ensuing term, the cause was submitted on the report and exceptions thereto for final decree; and on December 1, 1893, the chancellor rendered his decision sustaining the first exception to the report, as to the amount that had been paid, with interest

thereon, to the State, and ascertained it to be $7,251.40 instead of $6,660.98, as reported by the register, as to the correctness of which ruling no question is here raised. One-seventh of this amount—$1,035.90—was the amount on this judgment, that defendant, May, was held to be liable as co-surety to contribute to complainants.

The register reported that he ascertained from the evidence, that the sureties of Britton had paid the sum of $1,374.40 on the judgment of the county and no more, that this was the cash payment, and a note for $2,500 had been given by complainants and James Collin, a co-surety, to the county for the balance of the judgment, which had never been paid, but which the commissioners' court had released and given up, under authority of an act of the legislature. This sum the chancellor approved as correct, which with the interest thereon to the date of the decree, he ascertaind to be $2,460 one-seventh of which, amounting to $351.40, he decreed as the sum to be paid by said May, to complainants by way of contribution. These two sums—$1,035.90 and $351.40, equalling $1,387.30—the court gave judgment for in said decree in favor of complainants against said May, with interest from the date of the decree, together with the costs, for which execution was authorized to be issued against him; and it was further decreed, that for the payment of that sum the complainants, by subrogation to the rights of the State and county, as judgment creditors upon the official bond of said tax collector, upon which complainants and defendant May were sureties, had a lien upon the property of the defendant May described in the bill, except so much thereof as had been allowed and set off to him as homestead. In the decree it was further ordered, that complaintants' lien on the property of defendant, May, was subject to the mortgages of the said Jones and R. Moore & Co., of prior date to January 1, 1883, and was prior and superior to the other mortgages, dated January 1, 1883, and thereafter. The reason assigned for the preference of the earlier mortgages, over the lien of the county as given by the chancellor, were, that on the 15th of February, 1884, the county compromised its judgment for $3,750 and costs, and on that day, $1,250 and costs

were paid, and this cash payment should apply to the earlier items of the account.

In this we apprehend the court fell into error. It had been made to appear, that the tax collector owed as a balance from the year 1879, the sum of $531.64, and for the tax year 1880, he was charged with $15,016.49. In the former decree, of November 20th, 1891, which was reversed on rehearing, the court correctly ascertained that the collector was owing the county, said sum of $15,016.49, on taxes due from October 1, 1880 to October 1, 1881—the beginning of the next ensuing tax year—and had paid thereon, the sum of $11,223.89, which deducted from the amount owing, left the sum of $3,792.60, as unpaid on that tax year; and for one-seventh of this sum it was held the defendant, May, was liable, on contribution to complainants, his co-sureties. It was also further held, in that decree, that the lien of the sureties who had paid the State judgment, was subject and inferior to the mortgages mentioned in the bill— which were executed prior to January 1, 1883—and as to the correctness of this ruling there is no dispute here raised—and was prior to all the other mortgages therein mentioned; and that their lien on account of payment of the county's judgment was superior to all of said mortgages.

From the statement of the account, as made by the court, taken from the evidence furnished by the county treasurer, Chadwick, it is clear that the tax collector was a defaulter to the county on October 1, 1881, for $3,792, and this was prior to the date of any of said mortgages.

The rendition of the judgment had no effect on the lien of the county for defaults of the collector theretofore occurring. It merely ascertained the amount of all the defaults committed by the collector prior to its rendition. The judgment and the lien of the county are separate and distinct things.—*Baker v. Schuessler*, 85 Ala. 545; *Turner v. Teague*, 73 Ala. 555; *Knighton v. Curry*, 62 Ala. 412.

What is meant by the expression, in the opinion, "that the compromise and cash payment, [of $1,250 and costs] should apply to the earlier items of the account," we are not sure we understand. Whatever may have been meant, surely the payment of the county's

judgment by the sureties, by which payment they acquired the lien of the county, did not operate in any manner to destroy or impair the lien. If so, the very act by which they acquired the right of contribution, by subrogation to the rights of the county, destroyed their right of contribution, while it is unquestionably true, that their payment operated to place them in the shoes of the county, with all its rights unimpaired.—*Baker v. Schuessler*, 85 Ala. 545, *supra*. The lien of the county on the property of the sureties on the bond, extended back to and continued from the date of the default of the collector, and when complainants, as sureties, came forward and paid the judgment, rendered in favor of the county, by that very act, they were subrogated to the county, with all its rights and remedies against their co-surety who had paid nothing. There is no room here for the doctrine of the application of payments to the earlier items of an account. Whatever the complainants paid, whether much or little, towards the payment of this judgment, relieved the property of their non-paying co-surety to that extent, and they acquired the county's lien and the right to enforce the same on his property, to the extent of his aliquot proportion of the sum so paid. On this point, the decree of the chancery court, of November 20th, 1891, was correct. The lien of complainants for what they paid on the county's judgment, as the chancellor previously decided, must be held to be prior and superior to all the mortgages mentioned in the bill, since the defaults of the collector, for which the said judgment was rendered, occurred, as is shown, prior to October 1, 1881, and before the date of any of said mortgages. It is not questioned that their lien, on what they paid on the State's judgment, is subject and inferior to the mortgages of Jones and R. Moore & Co., executed prior to January 1, 1883, and is superior to all the other mortgages mentioned in the bill, executed on and after that date.

We find no just ground of complaint against the decree of the chancery court appealed from, except, in that it adjudges the lien of the county of Hale, to which complainants are substituted and subrogated for contribution as against their co-surety, May, to be subject and inferior to the two mortgages of Madison Jones, and the one of R. Moore & Co., executed prior to 1st January,

[Loeb & Loeb v. Waller.]

1883, whereas, the said lien of the county was prior and superior to said mortgages, and all the other mortgages mentioned in the bill. The decree is here corrected to the extent we indicate, and as corrected it is affirmed. The decree of the chancery court will be executed by the register, as directed, and the sale of the property therein ordered sold, will be made, subject alone to the priority of the said mortgages, prior to January 1, 1883, so far as the State's lien and judgment are concerned, and free from the claim of all the mortgages mentioned in the bill, so far as the county's lien and judgment extend.

Let the costs of the appeal in the court below and in this court be paid by the appellees, T. T. May, Madison Jones and R. Moore & Co.

Corrected and affirmed.